Filed 11/13/13  P. v. Curry CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BILLY JAMES CURRY,<br><br>    Defendant and Appellant. | B244828<br><br>(Los Angeles County<br>Super. Ct. No. TA 123064) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Allen Joseph Webster, Jr., Judge.  Affirmed with directions.

Rachel Lederman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Kenneth C. Byrne and Julie A. Harris, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Appellant Billy James Curry challenges his conviction for one count of inflicting corporal injury upon a spouse plus enhancements on two grounds: (1) Evidence Code section 1109[1] violates due process on its face because it permits the prosecution to introduce other acts of domestic violence as propensity evidence, and (2) the jury instruction regarding the jury's consideration of that evidence in this case was argumentative and violated appellant's due process and fair trial rights. We affirm. We will, however, direct the trial court to amend the sentencing minute order and abstract of judgment to correct a clerical error in appellant's sentence.

## PROCEDURAL HISTORY

In an amended information filed September 26, 2012, appellant was charged with one count of corporal injury to a spouse or cohabitant in violation of Penal Code section 273.5, subdivision (a). It was further alleged appellant personally inflicted great bodily injury upon the victim under circumstances involving domestic violence (Pen. Code, § 12022.7, subd. (e)), and he had a prior domestic violence conviction within the past seven years (Pen. Code, § 273.5, subd. (e)(1)). It was also alleged appellant had two prior convictions that qualified as "strikes" (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), as serious felonies (Pen. Code, § 667, subd. (a)(1)), and as prior serious or violent felonies requiring he serve any term of imprisonment in state prison (Pen. Code, § 1170, subd. (h)(3)).

Following trial, the jury found appellant guilty of the charged offense and found the great bodily injury allegation true. The court found the prior conviction allegations true and denied appellant's motion to strike them. The court sentenced appellant to a total of 33 years to life in prison. As discussed *post*, although the sentencing minute order and abstract of judgment incorrectly state otherwise, the term consisted of 25 years to life for the base count, plus five years consecutive under Penal Code section 667, subdivision (a)(1), and the low term of three years consecutive for the great bodily injury

---

[1]     Undesignated statutory citations are to the Evidence Code.

enhancement. The court also imposed various fines, fees, and custody credits not at issue here. Appellant timely appealed.

## STATEMENT OF FACTS

On April 12, 2012, appellant lived with his girlfriend Tina Jackson at his home in Los Angeles. Appellant got into an argument with Jackson because he thought she was cheating on him and he was jealous. Appellant punched and slapped Jackson in the face, and when she fell to the ground, he slapped her again. Jackson testified appellant punched her numerous times in the head, ribs, and back. Appellant also struck her with a bat two or three times in the back. At one point appellant also threw a crowbar that ricocheted off the wall and hit her in the leg. Jackson was taken to the hospital and treated for fractured ribs and blood in her urine.

Appellant's sister Ruby Kiwanuka was visiting appellant and her other brother on the day of the incident. She was standing in the driveway when she heard Jackson calling for her help. She ran into the house and dialed 911. As she was talking on the phone, she heard someone say "help," and when she ran into the bedroom, she saw appellant hit Jackson with his fist. Kiwanuka told him to stop hitting her, picked up a bat, and chased him outside with it. She pursued him until he disappeared around the corner. She was initially still on the 911 call when she pursued him, but hung up until he disappeared, and then she called back. Audio from Kiwanuka's 911 call was played for the jury.

While paramedics treated Jackson at the scene, Los Angeles County Sheriff's Deputy Alejandro Ramirez arrived and conducted a preliminary interview with her. Because Jackson was in a great deal of pain and being taken to the hospital, Deputy Ramirez was only able to get a basic statement from her. She appeared bruised and bloody with some swelling and she was wearing a neck brace.

At the hospital, Jackson was treated by Dr. Scott David Bricker, who testified Jackson had bruising on her face and extremities, and Jackson had told him they were caused by appellant assaulting her with his fists, a bat, and a crowbar. An X-ray and CT scan revealed she had a broken nose, a recent rib fracture, possibly an older spine fracture, and lots of soft tissue bruising and swelling. Dr. Bricker testified these injuries

3

were consistent with being hit with a bat or fist, or with being kicked, but not with being slapped.

Clinical social worker Lilalee Vicedo also spoke with Jackson the day she was admitted to the hospital. Jackson had an abrasion on her forehead and a bloody nose, and she told Vicedo her boyfriend had hit her with a bat.[2]

Jackson testified to a similar altercation with appellant at their house on March 25, 2011, when appellant had accused her of cheating on him with other men. She ran outside and away from him until he caught her. He punched her in the nose and she fell to the ground, where he slapped her and kicked her in the ribs. A friend saw the altercation and pulled appellant away from her; the friend took her to her sister's house and her sister called paramedics, who took her to the hospital. At trial, Jackson was shown photographs of her injuries from the incident, showing a bruise on her ribs and a bloody nose, which was fractured.

Deputy Erin Higgs responded to the call on March 25, 2011, and later went to the hospital where she took photographs of Jackson. At the time, Jackson was in a great deal of pain, she had a bloody nose and scratches and abrasions to her face. Deputy Higgs was unable to find appellant afterward.[3]

At the time Jackson testified at trial for the current incident, she was in custody because she had not come to court when subpoenaed for the preliminary hearing. She testified she still loved appellant and remained in a relationship with him.

Appellant did not testify or call witnesses in his defense.

---

[2] Jackson did not tell any deputies appellant had hit her with a bat.

[3] Presumably this incident led to appellant's June 2, 2011 conviction for violating Penal Code section 273.5, subdivision (a) alleged in the amended information, but no evidence of the conviction itself appears to have been presented to the jury.

## DISCUSSION

### 1. *Section 1109 Does Not Violate Due Process*

With exceptions not pertinent here, section 1109 provides in relevant part: "[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 [bar to character evidence to prove conduct] if the evidence is not inadmissible pursuant to Section 352."[4] (§ 1109, subd. (a)(1).) Appellant asserts this section violates his due process rights on its face because it allows admission of uncharged acts of domestic violence to prove propensity to commit charged conduct.[5] Appellant did not raise this contention below, so he forfeited it. (§ 353; *People v. Catlin* (2001) 26 Cal.4th 81, 122-123.)

To avoid forfeiture, appellant argues his trial counsel was ineffective for failing to raise the argument in the trial court. In order to show ineffective assistance of counsel, appellant must show "(1) his . . . trial counsel's representation fell below an objective standard of reasonableness and (2) he . . . was prejudiced (i.e., there is a reasonable probability that a more favorable determination would have resulted in the absence of counsel's deficient performance)." (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1372, citing, inter alia, *Strickland v. Washington* (1984) 466 U.S. 668, 687.)

Appellant can demonstrate neither prong. In *People v. Falsetta* (1999) 21 Cal.4th 903 (*Falsetta*) the Supreme Court rejected a due process challenge to section 1108, which is nearly identical to section 1109 but applies to the admission of uncharged sex

---

[4] Section 352 states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

[5] Appellant does not argue on appeal that the trial court erred in admitting the *specific* evidence of his uncharged acts of domestic violence under section 352. Instead, he limits his argument to a facial challenge that section 1109 violates due process.

offenses.[6]  The court upheld that provision primarily because it preserves a trial court's authority under section 352 to exclude propensity evidence that is unduly prejudicial or would result in undue consumption of time.  (*Falsetta, supra*, at pp. 916-918.)  Like section 1108, section 1109 expressly incorporates section 352, and, although the Supreme Court has not specifically ruled on the constitutionality of section 1109, the Courts of Appeal have uniformly applied *Falsetta* to reject due process challenges to that section. (*See, e.g., People v. Johnson* (2010) 185 Cal.App.4th 520, 529; *People v. Cabrera* (2007) 152 Cal.App.4th 695, 704; *People v. Price* (2004) 120 Cal.App.4th 224, 240; *People v. Escobar* (2000) 82 Cal.App.4th 1085, 1095; *People v. Jennings* (2000) 81 Cal.App.4th 1301, 1310; *People v. Brown* (2000) 77 Cal.App.4th 1324, 1331-1334; *People v. Hoover* (2000) 77 Cal.App.4th 1020, 1026-1029; *People v. Johnson* (2000) 77 Cal.App.4th 410, 416-420.)

As appellant recognizes, we are bound to follow *Falsetta* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), and appellant asserts no arguments that might distinguish this case from *Falsetta* or from any of the cases extending *Falsetta* to section 1109.[7]  As a result, in the face of uniform, controlling authority, appellant's counsel did not unreasonably fail to raise the objection and even if she had, any objection

---

**6**     Section 1108 states in relevant part:  "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352."  (§ 1108, subd. (a).)

**7**     The court in *Falsetta* noted there was no undue consumption of time in that case because the defendant's prior convictions arising from guilty pleas were themselves admitted as evidence.  (*Falsetta, supra*, 21 Cal.4th at p. 916.)  Here, by contrast, there is nothing in the record to suggest appellant's prior domestic violence conviction was admitted into evidence.  Nevertheless, section 1109 is not limited to prior convictions, and the time consumed and risk of prejudice when convictions are not admitted into evidence are considerations for the section 352 weighing process, which is not at issue here. (See *People v. Johnson, supra,* 77 Cal.App.4th at p. 419, fn. 6; see also *People v. Johnson, supra,* 185 Cal.App.4th at p. 533 [although jury was not informed that prior misconduct resulted in a conviction, the conviction nonetheless reduced likelihood defendant would have to produce evidence to rebut uncharged conduct, citing *Falsetta*].)

would have been rejected, so appellant suffered no prejudice. (*People v. Ochoa* (1998) 19 Cal.4th 353, 463.)

## 2. The Jury Instructions on Prior Uncharged Conduct Were Not Erroneous

With regard to the uncharged domestic violence, the trial instructed the jury according to CALCRIM No. 852 as follows:

"The People presented evidence that the defendant committed domestic violence that was not charged in this case, specifically that the defendant committed an act of violence against Ms. Jackson on March 25, 2011.

"Domestic violence means abuse committed against an adult who is a cohabitant or former cohabitant, person who dated or is dating the defendant.

"Abuse means intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable fear of imminent serious bodily injury to himself or herself or to someone else.

"The term cohabitants means two unrelated persons living together for a substantial period of time, resulting in some permanency of the relationship. Factors that may determine whether people are cohabitating include, but are not limited to, (1) sexual relations between the parties while sharing the same residence, (2) sharing of income or expenses, (3) joint use or ownership of property, (4) the parties' holding themselves out as husband and wife, (5) the parties' registering as domestic partners, (6) the continuity of the relationship, and (7) the length of the relationship.

"You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant in fact committed the uncharged domestic violence. Proof by a preponderance of the evidence is a different burden of proof from proof beyond a reasonable doubt. A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.

"If the people have not met this burden of proof, you must disregard this evidence entirely.

"If you decide that the defendant committed the uncharged domestic violence, you may, but are not required to, conclude from that evidence that the defendant was disposed

7

or inclined to commit domestic violence and, based on that decision, also conclude that the defendant was likely to commit Count 1, as charged here. If you conclude that the defendant committed the uncharged domestic violence, that conclusion is only one factor to consider along with all the other evidence. It is not sufficient by itself to prove that the defendant is guilty of Count 1. The People must still prove the charge and allegation beyond a reasonable doubt."

Appellant argues this instruction was argumentative and violated his due process and fair trial rights. When proposed by a defendant, argumentative instructions are those that "invite the jury to draw inferences favorable to the defendant from specified items of evidence on a disputed question of fact, and therefore properly belong[] not in instructions, but in the arguments of counsel to the jury." (*People v. Wright* (1988) 45 Cal.3d 1126, 1135.) Appellant argues that, "by parity of reasoning," CALCRIM No. 852 highlighted unfavorable evidence against him and invited the jury to draw an inference in favor of the prosecution.

We can see no reason why the court's instruction was argumentative here. The Supreme Court approved a similar instruction guiding the jury's consideration of propensity evidence under section 1108 (*People v. Reliford* (2003) 29 Cal.4th 1007, 1012-1016), and courts have extended that reasoning to approve the same CALCRIM No. 852 instruction given in this case (*People v. Johnson* (2008) 164 Cal.App.4th 731, 738-740; *People v. Reyes* (2008) 160 Cal.App.4th 246, 252-253). Although the instruction referred to the March 2011 domestic violence committed by appellant against Jackson, it merely informed the jury how to properly consider it in weighing all the evidence and cautioned that the uncharged acts were not sufficient alone to prove appellant was guilty, which prevented the jury from weighing the evidence too heavily. In this respect, the instruction exceeded the one approved in *Reliford*. (*Reliford, supra*, at pp. 1015-1016 [finding no error in instruction omitting statement that the inference drawn from the uncharged conduct was only one item to consider in determining defendant's guilt].) Further, given that the trial court had no duty to instruct the jury as to the admissibility or use of other crimes evidence absent a request from appellant (*Falsetta,*

8

*supra*, 21 Cal.4th at p. 924),[8] the instruction given in this case almost surely inured to appellant's benefit by carefully confining the jury's consideration of the uncharged domestic violence.  Thus, the trial court did not err by giving the CALCRIM No. 852 instruction.

### 3.  *The Sentencing Minute Order and Abstract of Judgment Must Be Corrected*

The trial court imposed a total term of imprisonment of 33 years to life. According to the transcript of the sentencing hearing, the court imposed 25 years to life for the base count, and appears to have initially misspoken and identified an additional five years consecutive for the great bodily injury enhancement, and a low term of three years consecutive on the "enhancement."  Later, the court described the sentence as "25-to-life with this strike.  It's another five-year prior and three years on the enhancement." The sentencing minute order and abstract of judgment reflect the five-year additional term was imposed for the great bodily injury enhancement under Penal Code section 12022.7, subdivision (e) and the three-year additional term for the prior conviction under Penal Code section 667, subdivision (a)(1).

In context, it is clear the court imposed the five-year additional term under Penal Code section 667, subdivision (a)(1), which was required under that statute (*People v. Jordan* (2006) 141 Cal.App.4th 309, 319 [trial court lacks discretion to stay Pen. Code, § 667, subd. (a)(1) enhancement]), and imposed the low term of three years under Penal Code section 12022.7, subdivision (e).  Thus, the sentencing minute order and abstract of judgment must be amended to correctly reflect the sentence as pronounced by the court at the sentencing hearing.

### DISPOSITION

The judgment is affirmed.  We direct the trial court to issue an amended sentencing minute order and abstract of judgment correcting the errors identified herein

---

[8]     It is not clear from the record which party requested this instruction or whether the trial court gave the instruction on its own.

and forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


FLIER, J.

WE CONCUR:


RUBIN, Acting P. J.


GRIMES, J.

10