[Crim. No. 40260. Second Dist., Div. Four. Jan. 30, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL E. GUILFORD, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion has been certified for publication with the exception of issues I, II, and III.

■■■■■■■■
■■■■■■■■■■■

■■■■

■■■■■■■■■■■

## Counsel

Dennis A. Fischer, under appointment by the Court of Appeal, and Fischer & Hill for Defendant and Appellant.

John K. Van de Kamp, Attorney General, John R. Gorey and William V. Ballough, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

**AMERIAN, J.**—Paul E. Guilford appeals from a judgment entered May 14, 1981, following a jury trial in which he was convicted of two counts of attempted robbery (counts I and II, Pen. Code, §§ 664, 211) and one count of first degree murder (count III, Pen. Code, § 187).[1]

### Contentions

Appellant does not challenge the convictions for attempted robbery, but seeks reversal of the murder conviction on grounds that: (1) under section

---

[1]Hereinafter all references are to the Penal Code, unless otherwise specified.

1070, subdivision (a) appellant was entitled to, but did not receive, 26 peremptory challenges because he was charged with murder without special circumstances which is punishable by a term of 25 years to life in prison; (2) the trial court committed prejudicial error by failing to give appellant's requested jury instruction concerning the relationship of reasonable doubt and the proximate cause of the victim's death; (3) the trial court committed prejudicial error by refusing appellant's requested jury instruction on second degree felony murder based on the lesser included offense of grand theft from the person; and (4) the felony-murder rule, which served as the basis of appellant's conviction for murder, is unconstitutional because he was deprived of a jury determination of malice aforethought, necessary to a conviction of first degree murder.

Recently, our Supreme Court held that persons charged with murder without special circumstances are entitled to 26 peremptory challenges under section 1070, subdivision (a). (*People* v. *Yates* (1983) 34 Cal.3d 644 [194 Cal.Rptr. 765, 669 P.2d 1].) However, the Supreme Court instructed that its decision was not to be retroactively "employed to overturn the verdict or judgment in those trials or retrials commenced before this decision becomes final." (*Id.,* at p. 654.) Accordingly, the judgment in this case will not be reversed on the ground that appellant did not receive 26 peremptory challenges. As to the remaining grounds appellant contends require reversal of the judgment, we also find them to be without merit.

We do, however, find merit to another of appellant's contentions: that the trial court erred in sentencing by failing to stay the one-year enhancement for use of a deadly weapon (§ 12022, subd. (b)) in count I because the sentence as to that count was stayed.

## STATEMENT OF FACTS

In counts I and II of a consolidated information, appellant was charged with attempting to rob Selena Pendleton and William Wilson, respectively. In count III, appellant was charged with first degree murder of Ms. Pendleton without special circumstances. Use allegations contained in counts I and II alleged that appellant used a tire iron within the meaning of section 12022, subdivision (b). As to count I, it was also alleged that appellant inflicted great bodily injury upon Ms. Pendleton with the intent to inflict such injury within the meaning of section 12022.7. The jury found appellant guilty on all three counts and found as true the use and bodily injury allegations in count I.[2]

---

[2]Although the information alleged use of a deadly weapon in connection with count II, the enhancement question on that count was not submitted to the jury.

Stated in a light most favorable to the judgment of conviction (*People* v. *Johnson* (1980) 26 Cal.3d 557 [162 Cal.Rptr. 431, 606 P.2d 738]), the following is a summary of the evidence adduced at trial:

On December 16, 1979, between 8 and 8:30 p.m., while Ms. Pendleton and her friend, Mr. Wilson, were waiting for a bus, they were accosted by two men. One man grabbed Mr. Wilson by the collar, pushed him to the ground, and announced, "This is a robbery." The man was holding a knife and demanded money from Mr. Wilson. At that moment, Mr. Wilson heard Ms. Pendleton cry out for help. Also at that moment the man who was upon Mr. Wilson got up and ran away because a police car was observed in a nearby intersection.

Police Officer Compton was in the police car. Officer Compton observed a shiny object in the hand of the man who was on top of Mr. Wilson. Officer Compton also observed a man struggling with Ms. Pendleton. The man was holding Ms. Pendleton by the shoulder with one hand and was pulling at her purse with the other. The man was also holding a metal bar. When this man saw the police car, he let Ms. Pendleton go and walked away from the group. When Officer Compton left his car and approached the group, he came within six feet of the man who had been struggling with Ms. Pendleton. Officer Compton got a good look at the man's face. When the man ran away, Officer Compton told him to stop but did not pursue him because he was apprehending the other man and taking that man into custody. Both Officer Compton and Mr. Wilson identified appellant as the man who struggled with Ms. Pendleton.

Immediately after apprehending the man who was on top of Mr. Wilson, Officer Compton spoke with Ms. Pendleton, whom Officer Compton described as excited, nervous and shaken. In response to Officer Compton's questioning, Ms. Pendleton told him that she was grabbed and struck over the head and that the suspect who hit her over the head was pulling at her purse when the officer arrived. Ms. Pendleton also told Officer Compton that the man who ran away was the one who struck her over the head.

Officer Compton found a tire iron in some bushes near the scene of the attempted robberies. Ms. Pendleton identified the tire iron as the object with which she was struck. The knife used by the man who accosted Mr. Wilson was found in the area near the scene of the crimes.

Ms. Pendleton refused several offers to summon an ambulance. There were no bleeding wounds on her head, but there was a large bump on her forehead. Before Officer Compton left the scene, he called a cab for Ms. Pendleton. Mr. Wilson remained with Ms. Pendleton after the officer left.

While Ms. Pendleton and Mr. Wilson stood waiting for the cab, Ms. Pendleton collapsed on the sidewalk. Ms. Pendleton, however, did not hit her head on the sidewalk because Mr. Wilson caught her, breaking her fall. Shortly thereafter, the police returned, saw that Ms. Pendleton needed medical assistance and called an ambulance.

After turning the knife and the tire iron over to another officer for booking into evidence, Officer Compton returned to the scene of the attempted robberies in his personal car and set up surveillance of a blue Cadillac he earlier observed parked near the scene. Within 10 minutes Officer Compton saw a car pull up next to the Cadillac. Two women and appellant were inside the car. Appellant got out of the car, got into the parked Cadillac and drove away behind the car driven by the two women. Officer Compton followed the two cars and, by portable radio, radioed for assistance. Shortly thereafter, several police units arrived and both cars were stopped.

Officer White was present when the two cars were stopped and appellant was arrested. While the two women were being questioned by Officer White, appellant blurted out, "They didn't do anything. I don't even know them. They didn't have anything to do with it."

Ms. Pendleton died in the hospital two days after the attempted robberies. She died from a heart attack caused by stress and traumatic head injuries. There were two head injuries. One was a contusion over the right eye. A hemorrhage was beneath the skin in this area. There was a second injury over the back of Ms. Pendleton's head with two areas of hemorrhaging beneath the skin. The evidence showed that Ms. Pendleton suffered severe atherosclerosis and had a history of prior heart attacks.

DISCUSSION

I-III*

. . . . . . . . . . . . . . . . . . . . . . . .

IV

■ *Did the trial court err in sentencing appellant when the one-year enhancement for use of a deadly weapon (§ 12022, subd. (b)) as to count I was not stayed but the sentence imposed on count I itself was stayed? Yes.*

During sentencing, the trial court imposed the upper term of three years for count I, the attempted robbery of Ms. Pendleton. Since the jury found

---

*See footnote, *ante,* page 406.

as true the allegations that appellant inflicted great bodily injury (§ 12022.7) and that he used a deadly weapon in connection with count I (§ 12022, subd. (b)), the upper term sentence for count I was enhanced three years and one year respectively. With respect to count II, attempted robbery of Mr. Wilson, an upper term of three years was imposed.

Pursuant to section 190, appellant was sentenced to a term of 25 years to life in prison on count III for the first degree felony murder of Ms. Pendleton. By operation of section 654,[6] the sentence as to count I was stayed because the same set of facts supporting the conviction in count I supported the conviction on count III. The three-year enhancement imposed pursuant to section 12022.7 on count I was also stayed, but the one-year enhancement for the use allegation on that count was not stayed. The stays were ordered to become permanent upon completion of the sentence on count III, and count III was ordered to run consecutive to the three-year upper term sentence imposed for count II.

Appellant contends that the enhancement in count I for the use allegation should have been stayed. We have not been referred to nor have we discovered any cases dealing with the precise question presented here, i.e., whether an enhancement relating to a count may be treated as having viability independent of the sentence on that count, so that even where the sentence on the count is stayed, the enhancement as to that term is not automatically required to be stayed. We conclude that the effect of refusing to stay that enhancement here breathes independent life into count I and does violence to the concept embodied in section 654. We hold that an enhancement must necessarily be stayed where the sentence on the count to which it is added is required to be stayed.[7]

By definition, an enhancement "means an additional term of imprisonment added to the base term." (Cal. Rules of Court, rule 405(c).) A base term "is the determinate prison term selected from among the three possible terms prescribed by statute or the determinate prison term prescribed by law if a range of three possible terms is not prescribed." (Cal. Rules of Court, rule 405(b).)

Section 12022, subdivision (b), provides in part that: "Any person who personally uses a deadly or dangerous weapon in the commission or at-

---

[6]Section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

[7]The Attorney General concedes that the enhancement should have been stayed. *People v. Barela* (1983) 145 Cal.App.3d 152 [193 Cal.Rptr. 257], cited by both parties to this appeal is not relevant.

tempted commission of a felony shall, upon conviction of such felony or attempted felony, *in addition and consecutive to* the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an *additional term* of one year, unless use of a deadly or dangerous weapon is an element of the offense of which he was convicted. . . ." (Italics added.)

By definition, then, since an enhancement for use of a deadly weapon in connection with commission or attempted commission of a felony is imposed in addition and consecutive to the prescribed punishment for the felony or attempted felony, it follows that time to be served for the enhancement can only be served if and after time is served on the base term. Consequently, if the stay of the sentence for the base term becomes permanent, time for that enhancement, by definition, will never be served. Furthermore, failure to stay an enhancement, where the base term to which it is added is stayed, and requiring that time be served only for the enhancement has the effect of elevating the enhancement to the status of an offense. Enhancements are not offenses, they are punishments. (*People* v. *Boerner* (1981) 120 Cal.App.3d 506, 511 [174 Cal.Rptr. 629].)

### DISPOSITION

Appellant's sentence is modified to the extent that the enhancement for use of a deadly weapon (§ 12022, subd. (b)) imposed as to count I is ordered stayed. The judgment as modified is affirmed.

Kingsley, Acting P. J., and Saeta, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 28, 1984.

---

*Assigned by the Chairperson of the Judicial Council.