Filed 6/10/15  P. v. Zorich CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID MITCHELL ZORICH,<br><br>    Defendant and Appellant. | G049783<br><br>(Super. Ct. Nos. 11WF0253, 12WF0101)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Carla Singer, Judge.  Affirmed.

Nancy Mazza for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Sean M. Rodriquez, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Defendant David Mitchell Zorich appeals after a jury convicted him of aggravated assault and possession of a controlled substance, contending the trial court erred in not striking his prior "strike" conviction under the "Three Strikes" law, in failing to stay the sentence on the crime-bail-crime enhancement, and in purportedly failing to exercise its discretion to strike the crime-bail-crime enhancement. We find no error on the court's part and affirm.

I

FACTS

By way of an amended information consolidating Orange County Superior Court case Nos. 11WF0253 and 12WF0101, defendant was charged with being a felon in possession of a firearm (Pen. Code, § 12021, subd. (a)(1); count one; all undesignated statutory references are to the Penal Code) and actively participating in a criminal street gang (§ 186.22, subd. (a); count two) on November 3, 2010, assault with force likely to cause great bodily injury (§ 245, subd. (a)(1); count three) and actively participating in a criminal street gang (§ 186.22, subd. (a); count four) on April 4, 2011, and with possessing oxycodone for sale (Health & Saf. Code, § 11351; count five) and possessing Ecstacy (MDMA) (Health & Saf. Code, § 11377, subd. (a); count six) on January 12, 2012. The information further alleged a gang enhancement (§ 186.22, subd. (b)(1)) in connection with counts one, three, and five; a great bodily injury enhancement (§ 12022.7, subd. (a)) in connection with count three; a crime-bail-crime enhancement (§ 12022.1, subd. (b)) in connection with counts five and six; and further alleged defendant suffered a prior felony conviction within the meaning of the Three Strikes law (§§ 667, subds. (d), (e)(1); 1170.12, subds. (b), (c)(1))[1] and suffered a prior serious felony conviction (§ 667, subd. (a)(1)).

---

[1] For ease of reading and because the three strike provisions of the two statutes are similar, future references to three strike provisions are to section 667 only.

The jury convicted defendant of the felony assault (count three) and found that defendant personally inflicted great bodily injury during the assault, but found the attached gang enhancement not true. The jury further found defendant guilty of possessing Ecstacy (count six) and found true the attached crime-bail-crime enhancement. The jury acquitted defendant of being a felon in possession of a firearm (count one), and of actively participating in a criminal street gang (counts two and four). The jury did not find any gang enhancement true. The jury was unable to reach a verdict on count five (possession of oxycodone for sale) and the court declared a mistrial on that count.

A court trial was held on the crime-bail-crime and prior conviction allegations. The court found all three allegations true. Due to the issues raised on appeal, only the facts relating to the charges for which defendant was convicted (counts three and six) are set forth below.

A. *Assault With Force Likely to Cause Great Bodily Injury (Count Three)*

On April 4, 2010, Brandon Rodriguez appeared at the West Justice Center in Westminster for a court appearance, at which point he was taken into custody. Later that day, a deputy sheriff working with the in-custody defendants saw Rodriguez's upper lip was cut open to his nostrils and the wound appeared to need suturing. When asked what had happened, Rodriguez said he had fallen and hit his face on the floor. The deputy took Rodriguez to the Huntington Beach Hospital where he received seven stitches to his lip. After returning from the hospital, the deputy reviewed a video of what happened to Rodriguez inside a holding tank at the West Justice Center.

The tape showed Rodriguez, who was still in civilian clothing, walk into the cell. It appeared that defendant saw Rodriguez enter the tank. Defendant then turned

3

toward another inmate, Danny Salazar, and walked over to Salazar. It looked as if defendant and Salazar had a conversation, watched Rodriguez, and followed him to where he sat down. Defendant stood on Rodriguez's right side and Salazar stood to Rodriguez's left. Salazar took off his shirt, exposing his tattoos. The deputy said she has seen inmates take off their shirts to expose their tattoos, letting other inmates know who they are. Defendant struck Rodriguez about the face and body several times. Salazar hit Rodiguez a couple of times as well.

B. *Possession of Oxycondone for Sale (Count Five) and Possession of Ecstacy (Count Six)*

On January 12, 2010, Deputy Sheriff Timothy Critz of the gang enforcement team and a number of other deputies conducted a parole search of defendant's residence on Adams Street in Midway City. Defendant lived there with his wife and small child. During the search, Critz found ninety-nine, 30-milligram oxycodone pills inside a paper bag in a dresser. The pills were not in a prescription bottle and there was no prescription in the paper bag.

On a bookshelf in the garage, another deputy found $137 inside a semi-insulated lunch bag. The money consisted of "mostly small denominations." Behind the bag was a prescription bottle in the name of Kerry Fink. Inside the prescription bottle were ninety-eight, 30-milligram oxycodone pills. In the same vicinity, the deputy found two small, clear plastic Ziplock bags. One contained four blue pills stamped Telpphone Pokes, generally referred to as Pokies, and contained MDMA, also known as Ecstacy. The other contained two small green tablets stamped with an unknown design and believed to contain MDMA. Underneath the shelf was a box for 150 sandwich bags. The box contained only 10 sandwich bags.

4

## II

## DISCUSSION

A. *The Court did Not Err in Denying Defendant's Request to Strike a Prior "Strike."*

Under the Three Strikes law (§ 667, subds. (b)-(i)), a defendant who has been convicted of a felony and who has previously been convicted of a serious or violent felony, is to be sentenced to double the amount of time he or she would otherwise receive. (§ 667, subd. (e)(1).) Nonetheless, the trial court has the authority to strike in the furtherance of justice, a prior felony conviction under the Three Strikes law. (*People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530 (*Romero*).) Defendant invited the trial court to strike his prior felony "strike" conviction pursuant to section 1385.

Section 1385 provides in pertinent part: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." (§1385, subd. (a).) As used in section 1385, furtherance of justice "'"requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People*, in determining whether there should be a dismissal. [Citations.]" [Citations.] At the very least, the reason for dismissal must be "that which would motivate a reasonable judge." [Citations.]' [Citation.] 'Courts have recognized that society, represented by the People, has a legitimate interest in "the fair prosecution of crimes properly alleged." [Citation.] "'[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion.' [Citations.]"' [Citation.]" (*Romero*, *supra*, 13 Cal.4th at pp. 530-531.)

Defendant claims the court erred in denying his invitation.[2]  We review a trial court's decision denying *Romero* relief for an abuse of discretion.  (*People v. Clancey* (2013) 56 Cal.4th 562, 581.)  It is the defendant's burden to demonstrate the sentencing decision was irrational or arbitrary.  (*People v. Philpot* (2004) 122 Cal.App.4th 893, 904.)

In support of defendant's invitation for the court to strike his prior "strike" conviction in 1998 for active participation in a criminal street gang (§ 186.22, subd. (a)), defense counsel argued the punishment for the prior conviction should be stricken because the conviction was "remote in time" and because the conviction was unrelated to the present offenses, given the jury acquitted him of active gang participation charges and found the gang enhancements not true.

In deciding whether to strike a prior felony conviction under *Romero*, the Supreme Court has stated trial courts should "consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)  In light of the application of these factors to the present case, we find the court did not abuse its discretion.

---

[2]  "Although section 1385 provides that a dismissal 'in furtherance of justice' may be ordered either on the motion of the district attorney, or on the court's motion, a defendant may invite the court to exercise its power by an application to strike a count or allegation of an accusatory pleading, and the court must consider evidence offered by the defendant in support of his assertion that the dismissal would be in furtherance of justice. [Citations.]" (*Rockwell v. Superior Court* (1976) 18 Cal.3d 420, 441-442.)

According to the probation report, defendant suffered misdemeanor convictions for disturbing the peace, false identification to a police officer, disobeying a court order, vandalism, assault, battery, possession of a hypodermic needle/syringe, possession of a controlled substance, and trespassing (two convictions) between 1988 and 1995. Additionally, in 1995 he was convicted of a felony violation of possessing a controlled substance. He was placed on probation. He violated probation, was placed back on probation, violated probation again, and was sentenced to state prison for two years. After his release, he twice violated the terms of his parole.

In 1998, defendant was convicted of unlawfully taking an automobile in violation of Vehicle Code section 10851, subdivision (a), and with actively participating in a criminal street gang. He was sentenced to 16 months in state prison. He violated his parole four times after his initial release from prison on that case. In 2001, he was convicted of possessing a controlled substance for sale and was sentenced to state prison for three years. While he was in prison, he was disciplined for taking part in a riot. He violated his subsequent parole twice. Then in 2006, defendant was convicted of possessing a controlled substance, was sentenced to state prison for 32 months, and violated parole again after being released. According to the probation report, defendant was on parole at the time of the commission of the present offenses. Although defendant's prior "strike" conviction occurred in 1998, he has not been crime-free since then. In fact, he continuously committed other felonies after that conviction. Even the present offenses were committed while he was on parole. Indeed, defendant was sentenced to state prison three times and violated his parole after each commitment. Moreover, defendant's conviction in the present matter for aggravated assault in which he inflicted great bodily injury, is a serious and violent felony (§ 667, subd. (c)(8) [violent felony]; 1192.7, subd. (c)(8) [serious felony]) and will now be defendant's second "strike." Furthermore, even after committing a serious and violent offense in this matter,

7

he was released from custody and committed yet another felony. Notwithstanding the many favorable letters submitted on his behalf, we cannot consider defendant as being "outside the spirit of the Three Strikes law." (*People v. Williams*, *supra*, 17 Cal.4th at p. 163.)

We also reject defendant's contention that the court acted contrary to the jury's findings. The jury acquitted defendant of the gang charges and enhancements. The court did not express findings contrary to the jury's verdict and findings. Defense counsel argued the jury's acquittal on the active participation in a criminal street gang charges and the not true finding on a gang enhancement meant the defendant is unequivocally no longer a street gang participant. The jury's verdict and findings only established the jury found the prosecution failed to prove the truth of the gang charges and enhancement beyond a reasonable doubt. "A not guilty verdict is not the equivalent of finding the defendant innocent. [Citation.]" (*People v. Lloyd* (2015) 236 Cal.App.4th 49, 62.) The court pointed out that defense counsel stated but two reasons for striking the prior conviction: because counsel believed the jury's verdict "means [defendant is] not involved in the gang anymore" and because the prior serious felony conviction occurred in 1998.

In denying defendant's invitation to strike the prior "strike" conviction, the court referred to the probation report wherein defendant stated his frustration with the constant attention of law enforcement, and his decision to stay in Midway City, where gang members don't "mess[] with him or his family." The court stated he obviously has the respect of members of the gang. The court's decision not to strike defendant's prior conviction does not mean defendant suffered an adverse sentencing consequence contrary to the jury's verdicts and findings.

8

Additionally, defendant has refused to accept responsibility for assaulting the victim and inflicting great bodily injury.  Instead, he blames the police officers who arrested him for possessing a firearm after having previously been convicted of a felony.  He reasons that had he not been arrested on the gun charge, he would not have been in jail to commit the aggravated assault.  He also denied knowing about the Ecstacy, stating it was in the contents of a storage unit he purchased and he had not yet inventoried his purchase before he was arrested on the drug charges.

B.  *The Court did Not Err in Imposing the Crime-Bail-Crime Enhancement.*

For purposes of section 12022.1, a "primary offense" is a felony upon which the defendant has been released from custody on bail or his own recognizance prior to a final judgment.  (§ 12022.1, subd. (a)(1).)  A "[s]econdary offense" is a felony offense committed by the defendant while out of custody on the "primary offense."  (§ 12022.1, subd. (a)(2).)  If after release on a primary offense the defendant is thereafter convicted of having committed the secondary offense, the defendant is subject a two-year enhancement if the enhancement was pled and proven.  (§ 12022.1, subds. (b), (c).)

Defendant argues the court erred in imposing the crime-bail-crime enhancement.  He claims a court cannot impose a sentence on an enhancement attached to an underlying offense when the court has stayed the sentence on the underlying offense.  He cites *People v. Guilford* (1984) 151 Cal.App.3d 406, as his authority for his position.

As we shall explain, *People v. Guilford*, *supra*, 151 Cal.App.3d 406, is inapposite.  In that case, the defendant was charged with two counts of attempted robbery and one count of murder.  (*Id*. at p. 408.)  The victim of the murder was also named as the victim of one of the attempted robbery charges (count one).  The information alleged the defendant personally used a deadly weapon and inflicted great bodily injury during the

9

attempted robbery of the murder victim. (*Ibid.*) The jury found defendant guilty on all three counts and the court imposed a 25 years to life sentence on the murder charge. (*Id.* at pp. 410-411.) The court then imposed an upper term sentence (three years) on the attempted robbery charge involving the murder victim, three years on the great bodily injury enhancement, and an additional year for the weapon enhancement. The court stayed pursuant to section 654 the sentence on that count and the term imposed for infliction of great bodily injury, because the same underlying facts were the basis for the defendant's conviction for first degree murder. The trial court did not, however, stay the one-year term for the weapon enhancement attached to that attempted robbery conviction. (*Id.* at p. 411.) The defendant contended the trial court erred by not staying the weapon enhancement attached to the attempted robbery sentence stayed by the court. (*Ibid.*)

The *Guilford* court agreed. "[S]ince an enhancement for use of a deadly weapon in connection with commission or attempted commission of a felony is imposed in addition and consecutive to the prescribed punishment for the felony or attempted felony, it follows that time to be served for the enhancement can only be served if and after time is served on the base term." (*People v. Guilford*, *supra*, 151 Cal.App.3d at p. 412.) The present case, however, presents a distinction with a legal difference.

"'[T]here are at least two types of sentence enhancements: (1) those which go to the nature of the offender; and (2) those which go to the nature of the offense.' [Citation.] The first category typically enhances the sentence due 'to the *defendant's status* as a repeat offender.' [Citation.] 'The second category of enhancements, which are exemplified by those authorized under sections 12022.5 and 12022.7, arise from the *circumstances of the crime* and typically focus on what the defendant did when the current offense was committed.' [Citation.]" (*People v. Ahmed* (2011) 53 Cal.4th 156, 161.) A section 12022.1 enhancement does not go to the nature of a charged offense, but

10

rather is based on the defendant's on-bail status at the time the secondary offense was committed. (See *People v. Meloney* (2003) 30 Cal.4th 1145, 1159.)

The weapon enhancement stayed in *People v. Guilford, supra*, 151 Cal.App.3d 406, was meant to punish a defendant for his action (use of a weapon) in committing an underlying felony. A crime-bail-crime enhancement does not punish a defendant for his or her conduct during the commission of an underlying felony. Rather, when applicable, and like an enhancement for a prior conviction (*People v. Sasser* (2015) 61 Cal.4th 1, 15), it punishes a defendant for his or her status at the time of the commission of a secondary offense. (*Ibid*.) In *People v. Guilford, supra*, 151 Cal.App.3d 406, the term imposed on the weapon enhancement attached to a count of attempted robbery was stayed because the sentence on the underlying attempted robbery conviction was stayed pursuant to section 654. Section 654 required the court to stay the sentence on the attempted robbery count because the facts underlying that offense were the same set of facts upon which the defendant's murder conviction was based. (*Id*. at p. 411; § 654.)[3]

The same section 654 consideration does not apply when an enhancement is based on the defendant's *status*, rather than an act or omission of the defendant committed during the course of an underlying felony. (See *People v. Coronado* (1995) 12 Cal.4th 145, 156 [if enhancement is based on an act or omission in the commission of a crime, section 654 should apply].) Unlike offense-based enhancements that apply to specific counts and may be imposed in connection with each count to which it applies, status-based enhancements apply only once in a case, regardless of the number of counts,

---

[3] "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ." (§ 654, subd. (a).)

11

and do not attach to particular counts. (*People v. Sasser*, *supra*, 61 Cal.4th at p. 15.) Therefore, the fact that the court permanently stayed the sentence imposed on count six[4] does not preclude the court from imposing sentence for the crime-bail-crime enhancement, notwithstanding the fact that count six was the secondary offense within the meaning of section 12022.1, subdivision (b).

C. *The Court did Not Err in Denying Defendant's Motion to Strike the Crime-Bail-Crime Enhancement Pursuant to Section 1385.*

Lastly, defendant contends the trial court erred in failing to strike the section 12022.1 crime-bail-crime enhancement. (See *People v. Melony*, *supra*, 30 Cal.4th at p. 1163 [trial court has authority under section 1385 to strike a section 12022.1 enhancement].) He says he filed a request for the trial court to strike the section 12022.1 enhancement and that the court did not rule on the motion, but stated it was obligated to impose the two-year statutory term. We do not find the argument convincing.

First, although the opening brief states defendant asked the court to strike the crime-bail-crime enhancement, defendant does not cite to the record where such a request was made. "'[I]t is counsel's duty to point out portions of the record that support the position taken on appeal. The appellate court is not required to search the record on its own seeking error. . . . [A]ny point raised that lacks citation may, in this court's discretion, be deemed waived. [Citation.]' [Citations.]" (*Kinney v. Overton* (2007) 153 Cal.App.4th 482, 497.) Second, defendant did file a motion seeking vacation of the true finding on the crime-bail-crime enhancement and dismissal of the enhancement, presumably based on insufficient evidence, but that issue has not been raised on appeal. That motion did not, however, refer to section 1385.

---

[4] The record does not indicate the reason the court permanently stayed the sentence on count six, but given the fact count six is not connected in time or place with defendant's conviction for the aggravated assault, it is safe to assume the court did not stay the sentence on count six pursuant to section 654.

12

Additionally, defendant states the trial court "never clearly declined to exercise its discretion" to strike the crime-bail-crime for sentencing purposes. *If* there had been a request for the court to strike the enhancement—and, again, we have not been cited to the record where such any such request was made—then defendant did not press for a ruling and has forfeited the issue. (Cf. *People v. Cunningham* (2001) 25 Cal.4th 926, 984 [failure to press for ruling on motion to sever forfeited issue for appeal].) "'"[W]here the court, through inadvertence or neglect, neither rules nor reserves its ruling . . . the party who objected must make some effort to have the court *actually rule*. If the point is not pressed and is forgotten, [the party] may be deemed to have waived or abandoned it, just as if he had failed to make the objection in the first place."' [Citations.]" (*People v. Braxton* (2004) 34 Cal.4th 798, 813.) We conclude the issue has not been preserved for appeal.

Defendant further argues the evidence suggests "the sentencing court would have struck the enhancement if it believed it had the authority." To the contrary, the record does not support such a conclusion. Not only did defendant fail to cite what evidence supports his position, we can find nothing in the record to indicate the court would have struck the enhancement. The court knew it had the authority to strike defendant's felony conviction under the Three Strikes law. Still it denied defendant's invitation, resulting in doubling the punishment on the aggravated assault charge. Moreover, the court selected the midterm (doubled) on the aggravated assault conviction as the base term, rather than sentencing defendant to the low term doubled. Thus, the court had ample opportunity to sentence defendant to two years less than it did, but it chose not to do so. Although we do not conclude the court was unaware of its jurisdiction to strike the crime-bail-crime enhancement, even were we to assume it was, we do not find the court would have struck the two-year enhancement had the court been aware it could.

### III

### DISPOSITION

The judgment is affirmed.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


FYBEL, J.