Filed 5/13/24  P.v. Jackson CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G061646 |
| v. | (Super. Ct. No. 16NF2053) |
| AARON VERMONT JACKSON, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed as modified.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal, Randall Einhorn and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found appellant Aaron Vermont Jackson guilty of murder and found true the special circumstance that the murder was committed during an attempted robbery. After he was sentenced to life, appellant timely noticed an appeal. On appeal, he contends his murder conviction should be reduced to second degree murder because the jury did not make a finding as to the degree of the murder. We conclude this argument is foreclosed by *People v. Mendoza* (2000) 23 Cal.4th 896, 908 (*Mendoza*), in which our high court held there is no degree of murder where the killing occurred during the commission of a burglary because all such murders are of the first degree. He also raises four sentencing challenges. We conclude he forfeited two, but showed two sentencing errors. Specifically, appellant is correct that a firearm enhancement must be stayed, and that the imposition of two assessments must be stricken because the trial court did not orally impose them. Accordingly, we correct the sentencing errors, and affirm the modified judgment.

**FACTS**

I.      *Procedural History*

In a first amended information, appellant and co-defendant Dejon Vincent Griffin were charged with the murder and attempted robbery of Maher Yousef on July 1, 2016. It was alleged as a special circumstance that the murder was committed during the attempted robbery, and that the defendants each personally used a firearm during the commission of the attempted robbery. It was further alleged that both defendants suffered a prior strike conviction under the Three Strikes law and a prior serious felony conviction. The case against appellant and Griffin was consolidated with the case against Jeffrey Tuli, who was charged with the murder of Yousef in a separately filed information. The consolidated case was tried before two juries: one jury for appellant and Griffin, and the other for Tuli.

On March 24, 2022, an Orange County jury found appellant guilty of murder and found true the allegation that he was a "major participant with reckless

2

indifference to human life while engaged in the commission or attempted commission" of robbery. It also found appellant guilty of attempted robbery and found true the personal firearm use enhancement. In a bifurcated proceeding, the trial court found true that Jackson had suffered a prior strike conviction and a prior serious felony conviction.

On July 29, 2022, the court sentenced appellant to a total state prison term of 65 years to life. On the murder count, the court imposed a term of 50 years to life (25 years to life, doubled for the strike prior). On the attempted robbery count, it imposed a base term of three years (the upper term), stayed the base term pursuant to Penal Code section 654,[1] and then imposed a consecutive term of 10 years for the attached firearm enhancement. The court also imposed a consecutive term of 5 years for the prior serious felony enhancement, and a $5,000 restitution fine.

II.     *Trial Testimony*

The victim Yousef was the owner of a check cashing services business in Buena Park. On July 1, 2016, before Yousef's business closed for the day, nearby security video showed a man wearing "a lighter-colored shirt over dark pants" exit a Chevy HHR vehicle and walk over to Yousef's Dodge Charger. The man crouched down and made a "jabbing motion" before running back to the Chevy, which then left the scene.

A.H., a co-worker and close friend of Yousef, testified that on July 1, 2016, at around 10:00 p.m., he and Yousef left the business in Yousef's vehicle. Yousef was driving A.H. to his home when Yousef noticed the car was veering to the right. They pulled over into a gas station and noticed a flat tire. Because there were no tools to change the tire, A.H. suggested that Yousef call his brother, who lived nearby, to bring them some tools. While waiting for Yousef's brother, A.H. went inside the gas station market to purchase some drinks while Yousef remained in the vehicle.

---

[1]     All further statutory citations are to the Penal Code, unless otherwise stated.

Security video showed a Chevy HHR vehicle following Yousef's vehicle to the gas station. When A.H. exited the store, he saw three armed men around Yousef's vehicle. Two men were on the driver's side, one of whom was talking to Yousef. A.H. identified the two men as appellant and Griffin. The other man, who A.H. later identified as Tuli, was on the passenger side. Tuli pointed his gun at A.H. before "put[ting] it down." Griffin also pointed his gun at A.H. before asking him, "Where's the money?" After A.H. stated they did not have money, appellant repeated his question before going to the trunk and checking under the spare tire. Tuli then fired a single shot at Yousef before all three men ran into the alley. Yousef died from the single gunshot wound to the right side of his head.

After police released video of the shooting to the public, Griffin's coworker contacted the police and identified Griffin as one of the suspects. Subsequently, police obtained warrants for Facebook and cellphone records for all three defendants. Appellant and Tuli were "Facebook Friends." A June 11, 2016 livestream video on appellant's Facebook page showed appellant and Griffin hanging out together.

The cellphone records showed appellant and Tuli exchanged 12 phone calls and 48 text messages the day before the shooting. On the day of the shooting, appellant and Tuli exchanged nine phone calls. That same day, appellant and Griffin exchanged nine phone calls and six text messages.

When police located the Chevy HHR at appellant's last known address, his mother was driving the vehicle. On July 28, 2016, appellant was arrested in Las Vegas, Nevada, driving a 1997 Chevy Suburban associated with Griffin. Griffin was apprehended in Washington state. Tuli was arrested in Riverside, California, for unrelated burglaries.

After Tuli was arrested, he was interviewed by police and the videorecording of the interview was played for the jury. In the interview, Tuli stated he was high on drugs the night of the shooting. That day, appellant and Griffin picked up

4

Tuli at his house. Appellant told Tuli about the plan to rob Yousef. It was Griffin who flattened the tire of the Yousef's car. Griffin had his own gun. Tuli was given a gun that appellant had on him. Tuli thought the gun was a BB gun. He claimed he never planned to shoot anyone but "panicked" when the victim tried to get out of the car via the passenger side. After the shooting, they drove back to Tuli's house and got rid of their clothing "off the 91" freeway on the way.

At trial, Tuli testified in his own defense. Tuli and appellant were friends and coworkers. Tuli denied participating in the shooting, claiming the three persons involved were appellant, Griffin, and a man named "Nick." Tuli testified he lied when he told police that Griffin slashed the victim's tire and that they got rid of their clothing on the 91 freeway. Tuli stated he took responsibility for the shooting because he was already facing a life sentence for the Riverside robberies.

## DISCUSSION

I. *Degree of Murder*

Appellant argues that because the jury's verdict did not contain an express finding the murder was in the first degree, his murder conviction must be reduced to second degree murder. We disagree.

Section 1157 states: "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree." However, section 1157 does not apply to a conviction for a killing committed during a robbery or burglary because "there are no degrees of such murders; as a matter of law, a conviction for a killing committed during a robbery or burglary can *only* be a conviction for first degree murder." (*Mendoza*, *supra*, 23 Cal.4th at p. 908.)

5

Appellant argues he is entitled to relief under the *McDonald-Beamon* rule.[2] "Under the *McDonald-Beamon* rule, a jury in a criminal case is required to determine the degree of the crime and if it does not, the offense is deemed to be of the lesser degree. [Citations.]" (*In re Birdwell* (1996) 50 Cal.App.4th 926, 928.) "[H]owever, the Supreme Court in *Mendoza*, *supra*, 23 Cal.4th 896, overruled *McDonald* in cases where, as here, the trial court instructed the jury only on first degree felony murder." (*People v. Hernandez* (2021) 60 Cal.App.5th 94, 111.) Here, the jury was not instructed on second degree murder, alternate theories of first degree murder, or any other homicide crimes. The only type of murder the jury considered in this case was felony murder. Because the killing of Yousef occurred during the attempted robbery, "the *only* crime of which a defendant may be convicted is first degree murder, and the question of degree is not before the jury." (*Mendoza*, at p. 910.) Stated differently, the *McDonald-Beamon* rule applies only if section 1157 applies, which is not the case here. Accordingly, *Mendoza* applies and we reject appellant's argument that the jury was required to find the degree of the murder.

II.      *Sentence on Attempted Robbery Conviction*

Effective January 1, 2022, Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3) (Senate Bill 567) amended section 1170 to provide that the middle term is now the presumptive term of imprisonment. Pursuant to the newly amended law, the trial court must "order imposition of a sentence not to exceed the middle term" unless there are "circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(1), (2).) However,"[t]he court may consider the defendant's prior convictions in determining

---

[2]      *People v. McDonald* (1984) 37 Cal.3d 351, overruled in part by *Mendoza*, *supra*, 23 Cal.4th at pp. 914-915; *People v. Beamon* (1973) 8 Cal.3d 625.

sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

Appellant argues the trial court erred when it imposed a stayed upper term on the attempted robbery conviction without any aggravating factor having been stipulated to by appellant, found true by a jury, or found true by the trial court after a valid court trial. Senate Bill 567, however, was in effect when the trial court imposed the sentence. Under well-established law, "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (*People v. Scott* (1994) 9 Cal.4th 331, 356.) The California Supreme Court has "conclude[d] that the waiver doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices. Included in this category are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or *failed to state any reasons or give a sufficient number of valid reasons*." (*Id.* at p. 353, italics added.) Because appellant did not object below, he waived any challenge to the stayed upper term sentence.

Next, appellant challenges the imposition of the 10-year term on the firearm enhancement attached to the attempted robbery, count 4, arguing that it should have been stayed. Respondent agrees and concedes the sentencing error. "[A]n enhancement must necessarily be stayed where the sentence on the count to which it is added is . . . stayed." (*People v. Guilford* (1984) 151 Cal.App.3d 406, 411.) We will modify the judgment to stay the enhancement. (*Id.* at p. 412.)

III.    *Assessments and Fine*

Appellant also raises two challenges to the imposition of certain assessments and fines. First, he contends the $60 court operations assessment and the $80 court facilities assessment in the abstract of judgment and minute order must be

7

stricken because the court did not orally impose those assessments. Respondent agrees. Generally, the oral pronouncement of judgment is controlling over the abstract of judgment or a minute order. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185 ["An abstract of judgment is not the judgment of conviction; it does not control if different from the trial court's oral judgment and may not add to or modify the judgment it purports to digest or summarize."]; *People v. Mesa* (1975) 14 Cal.3d 466, 471 ["Entering the judgment in the minutes being a clerical function (Pen. Code, § 1207), a discrepancy between the judgment as orally pronounced and as entered in the minutes is presumably the result of clerical error."].) After reviewing the sentencing record, we conclude the court operations assessment of $60 and court facilities assessment of $80 must be stricken. We strike those assessments.

Finally, relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157, appellant contends the trial court's order imposing a $5,000 restitution fine without determining his ability to pay violated his state and federal right to due process. He did not object when these fines and fees were imposed at his sentencing hearing in July 2022, which was over three years after *Dueñas* was decided. Therefore, this issue is forfeited. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1154; *People v. Greeley* (2021) 70 Cal.App.5th 609, 624.)

Appellant argues that trial counsel's failure to object amounted to ineffective assistance of counsel. But the record is silent as to counsel's reasons, if any, for failing to object. While appellant was represented by appointed counsel in both the trial court and on appeal, that alone does not demonstrate an inability to pay the restitution fine. (*People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397 ["a defendant may lack the 'ability to pay' the costs of court-appointed counsel yet have the 'ability to pay' a restitution fine"].) Additionally, we note the probation report indicates appellant was 41 years old, in good health, and has job training for auto body repair and auto painting. "Nothing in this record suggests [appellant] might be unable to work, or that [appellant]

8

might be ineligible for prison work assignments." (*People v. Lowery* (2020) 43 Cal.App.5th 1046, 1060-1061 [concluding any error in imposition of fines and assessments was harmless beyond a reasonable doubt because defendant can pay at least some of the fines from prison wages].) If ""“the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged[,] . . . unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation," the claim on appeal must be rejected.'" (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266.) In these circumstances, the claim of ineffective assistance is more appropriately decided in a habeas corpus proceeding. (*Id.* at p. 267.)

## DISPOSITION

Appellant's sentence is modified to the extent that the enhancement for personal use of firearm (§ 12022.53, subd. (b)) imposed as to count 4 (attempted robbery) is ordered stayed. The court operations assessment of $60 and court facilities assessment of $80 are stricken. The trial court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. The judgment as modified is affirmed.


DELANEY, J.


WE CONCUR:


MOORE, ACTING P.J.


MOTOIKE, J.

9