Filed 7/29/25

## CERTIFIED FOR PUBLICATION

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re CARLOS HUERTA,<br><br>On Habeas Corpus. | F088041<br><br>(Tulare Super. Ct. No. VCF215605A) |

ORIGINAL PROCEEDINGS; application for writ of habeas corpus.

Carlos Huerta, in pro. per.; and Steven Shorr, under appointment by the Court of Appeal, for Petitioner Carlos Huerta.

Galit Lipa, State Public Defender, Christina A. Spaulding, Chief Deputy State Public Defender, Marnie Lowe and Brooke McCarthy, Deputy State Public Defenders, for the Office of the State Public Defender as Amicus Curiae on behalf of Petitioner Carlos Huerta.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, Amanda D. Cary and Ian Whitney, Deputy Attorneys General, for Respondent the People.

-ooOoo-

## INTRODUCTION

In 2024, petitioner Carlos Huerta filed a petition for writ of habeas corpus in the superior court seeking relief under the Racial Justice Act (RJA) (Pen. Code, § 745).[1] The superior court denied the petition without appointing counsel, concluding that petitioner had failed to establish a prima facie claim for relief.

In October 2024, we issued an order to show cause (OSC) to address a threshold question: What legal showing is required to trigger the appointment of counsel in a habeas corpus petition asserting a violation of the RJA?

After we issued our OSC, the Fourth District Court of Appeal addressed this precise question. It held that, when an indigent petitioner files an RJA petition and requests counsel, the superior court must appoint counsel if the petition alleges facts that would establish a violation of the RJA. This occurs before the court conducts a prima facie review. (*People v. McIntosh* (2025) 110 Cal.App.5th 33, 39–40, 44 (*McIntosh*).) In other words, the applicable statute—section 1473, subdivision (e)—requires two procedural stages: an initial, lower threshold for appointment of counsel, and a subsequent prima facie review to determine whether the petition justifies issuance of an order to show cause and an evidentiary hearing.

Respondent concedes that *McIntosh* correctly interprets section 1473, subdivision (e). We accept respondent's concession. In this matter, the superior court misapplied the statutory sequence by requiring petitioner to make a prima facie showing before assessing whether he met the lower pleading threshold sufficient for the appointment of counsel.

Nevertheless, respondent urges us to deny the petition on procedural grounds, asking us to not reach the merits. In the alternative, respondent argues petitioner has failed to allege facts sufficient to trigger the statutory right to appointed counsel.

---

[1] All future statutory references are to the Penal Code unless otherwise noted.

We need not address respondent's procedural objections because we conclude the petition is facially defective. Petitioner has not met the lower pleading threshold necessary for the appointment of counsel under the RJA. (§ 1473, subd. (e).) We deny the petition.

## BACKGROUND

### I.      The Original Judgment Imposed in 2010.

In 2010, petitioner was convicted of three counts of premeditated attempted murder (§§ 664, 187, subd. (a)), along with accompanying felonies, such as assault with a deadly weapon (§ 245, subd. (a)(1)). The jury found true alleged gang enhancements (§ 186.22, subds. (b)(1)(A) and (b)(1)(C)). Petitioner was sentenced to a term of 53 years to life, plus 14 years in state prison.

### II.      In 2022, Petitioner Was Resentenced.

In 2022, petitioner was resentenced in the superior court following changes in the law concerning attempted murder. (See § 1172.6.) During the resentencing process, he reached a negotiated agreement with the prosecution that was adopted by the court. Petitioner received a determinate term of 26 years in prison. The new judgment retained multiple gang enhancements, including a 10-year term under section 186.22, subdivision (b)(1)(C).

During the resentencing proceedings in 2022, the parties did not address the RJA.

### III.      In 2024, the Superior Court Denies the Petition for Writ of Habeas Corpus.

In March 2024, petitioner filed a habeas corpus petition in the superior court, raising claims under the RJA. In April 2024, the superior court denied the petition, concluding that petitioner had failed to establish a prima facie claim for relief. The superior court denied the petition without appointing counsel.

**IV.    The Present Writ of Habeas Corpus.**

In May 2024, petitioner filed the present habeas corpus petition in this court. Petitioner, who is Hispanic, alleges that his charges and sentence were the product of racial discrimination in violation of the RJA.  He cites statistics showing that the prison population has a higher percentage of Hispanics than whites, and Hispanics receive a significantly higher percentage of felony enhancements.

**V.    Our OSC.**

In October 2024, this court issued our OSC, appointing counsel to represent petitioner at the appellate level.  We directed the parties to address the following three issues:

(1)    What legal showing is required for appointment of counsel in an RJA petition;

(2)    Is appointment of counsel to occur in the superior court proceeding prior to a review of the merits of the petition to determine if an order to show cause should issue; and

(3)    Did petitioner make the requisite showing to be entitled to the appointment of counsel under the RJA.

**VI.    The Parties' Arguments.**

Respondent filed a return in this court before *McIntosh* was published.  In general, respondent initially contended that petitioner had to satisfy a prima facie showing in order to have counsel appointed to represent him in his RJA petition in the superior court. According to respondent, petitioner failed to satisfy that standard.

Petitioner, through his appointed counsel, filed a traverse after *McIntosh* was published.  Relying on *McIntosh*, petitioner asserted that a prima facie showing is not required for counsel to be appointed in the superior court.  According to petitioner, his factual allegations are sufficient under the RJA to have this matter remanded to the superior court for further proceedings.

4.

The Office of the State Public Defender (amicus curiae or State Public Defender) filed an amicus brief with us. According to amicus curiae, petitioner was only required to plead a legally intelligible and factually plausible allegation of an RJA violation to be appointed counsel in an RJA-based writ of habeas corpus. Amicus curiae argued that counsel must be appointed before a court determines if an order to show cause should issue for a writ filed under the RJA.

After *McIntosh* was published, respondent filed additional briefing with this court wherein respondent now agrees that we should follow *McIntosh*. However, respondent continues to argue that petitioner's allegations are insufficient to have counsel appointed.

As explained below, we hold that the petition fails to allege facts that would establish a violation of the RJA.

## DISCUSSION

### I. The Petition is Facially Defective.

Section 1473, subdivision (e), governs the appointment of counsel in habeas corpus proceedings asserting claims under the RJA. The statute sets forth two procedural stages: the first directs the court to determine whether counsel must be appointed, and the second requires an assessment of whether the petition presents a prima facie case for relief. At the initial stage, if a petitioner cannot afford counsel, the court must appoint counsel when either (1) the petition "alleges facts that would establish a violation" of the RJA, or (2) the State Public Defender invokes its authority to request counsel.[2] (§ 1473, subd. (e).) The appointment of counsel precedes any prima facie determination, and that review is based on a lower pleading threshold. (*McIntosh, supra,* 110 Cal.App.5th at pp. 33, 39–40, 44.)

---

[2] In this matter, the State Public Defender is not invoking its statutory authority to appoint counsel. (See § 1473, subd. (e).) Instead, it argues that petitioner has independently met the pleading standard for counsel to be appointed.

5.

In a typical habeas petition, a court does not appoint counsel until the petitioner first establishes a prima facie claim for relief. (See Cal. Rules of Court, rule 4.551(d)(1); *People v. Lewis* (2021) 11 Cal.5th 952, 973.) *McIntosh* recently held that, in enacting section 1473, subdivision (e), the Legislature diverted the RJA from the standard writ process. (*McIntosh, supra,* 110 Cal.App.5th at p. 46.)

Respondent concedes that *McIntosh* correctly interprets section 1473, subdivision (e), and we accept that concession. In this matter, the superior court conducted the prima facie analysis without first determining whether petitioner satisfied the lower pleading threshold for the appointment of counsel. Nevertheless, that misstep does not alter the outcome; the petition is facially defective.

Petitioner asserts RJA violations under section 745, subdivisions (a)(3) and (a)(4)(A).[3] For his claim under subdivision (a)(3), petitioner must allege facts showing he was "charged or convicted of a more serious offense" than similarly situated individuals of other races "who have engaged in similar conduct and are similarly situated." He must also allege that the prosecution more frequently sought or obtained convictions in Tulare County "for more serious offenses" against people who share his race, ethnicity, or national origin. (§ 1473, subd. (e); § 745, subd. (a)(3).)

For his claim under section 745, subdivision (a)(4)(A), petitioner must allege facts showing he received a longer or more severe sentence than was imposed "on other similarly situated individuals convicted of the same offense." He must also allege that longer or more severe sentences were more frequently imposed in Tulare County "for that offense" on people who share his race, ethnicity, or national origin. (§ 1473, subd. (e); § 745, subd. (a)(4)(A).)

---

[3] The petition briefly mentions due process and equal protection principles, which we do not address. We evaluate his allegations solely under the statutory standards set forth in the RJA, which governs claims of racial bias in charging and sentencing. (§ 745, subd. (a)(3)–(4)(A).)

Petitioner, who is Hispanic, generally alleges he was charged and sentenced with a gang enhancement, and that Hispanic defendants in Tulare County are disproportionately subjected to such enhancements and longer sentences compared to similarly situated individuals of other races. He cites statistical data showing that, while Hispanics comprise 32.6 percent of the state population, they account for 37 percent of felony arrests, 35.9 percent of the prison population, and 66 percent of the "felony enhancement prison population." In contrast, he alleges that white defendants constitute 47.1 percent of the state population, but only 35.7 percent of felony arrests, 28.7 percent of the prison population, and 58.4 percent of those with felony enhancements. The petition has over 140 pages of exhibits, including data, reports and articles.

As we explain below, the petition is deficient because it fails to allege facts showing a qualifying offense as the basis for the asserted RJA violations. Instead, it relies solely on the charging and sentencing of gang enhancements, which do not fall within the scope of the relevant statutory provisions.

To evaluate whether petitioner's claims meet the statutory pleading requirements, we begin by examining the meaning of the term "offense" as used in section 745. Both subdivision (a)(3) and (a)(4)(A) require allegations tied to an "offense." The term "offense" is not defined in the RJA. Absent any indication the Legislature intended a word or phrase to be read in a special or technical sense, we give statutory language its plain and commonsense meaning. (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616; *Turo Inc. v. Superior Court* (2022) 80 Cal.App.5th 517, 521.) Courts refer to dictionary definitions to ascertain the ordinary meaning of a statutory term. (*Turo Inc. v. Superior Court,* at p. 521.)

Common dictionary definitions define "offense" as an "an infraction of law" or "illegal act." (Merriam-Webster Dict. Online <https://www.merriamwebster.com/dictionary/offense> [as of June 24, 2024], archived at <https://perma.cc/WK8M-TD6C>; Cambridge Dict. Online <https://www.dictionary.cambridge.org./dictionary/english/

7.

offense> [as of June 24, 2025], archived at <https://perma.cc/TX7F-H3ZW>.) These definitions reflect a general understanding that an "offense" refers to conduct that is itself criminal—not a sentencing enhancement.

This plain and ordinary meaning is reinforced by what the statute does not say. When the Legislature includes a specific term in a statute, it is presumed to exclude other terms not mentioned. (*Association of California. Ins. Companies v. Jones* (2017) 2 Cal.5th 376, 398; *Gikas v. Zolin* (1993) 6 Cal.4th 841, 852.) Subdivisions (a)(3) and (a)(4)(A) of section 745 refer only to an "offense" and omit any mention of enhancements. Had the Legislature intended to include enhancements, it could have done so explicitly. The omission is therefore presumed to be intentional and deliberate, and we decline to rewrite the statute. When the statutory text is clear, courts may not add to it or alter its scope to achieve a presumed purpose not found in the language or legislative history. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562.)

California law also consistently distinguishes enhancements from an underlying offense. Enhancements "are not offenses, they are punishments." (*People v. Guilford* (1984) 151 Cal.App.3d 406, 412.) For example, section 1170.1, subdivision (a), provides that the total term of imprisonment includes the base term for the felony plus "any specific enhancements" applicable to that offense. Section 1170, subdivision (h)(9), confirms that enhancements follow the punishment structure for the underlying "offense"—not the enhancement itself. Section 186.22, subdivision (b)(1), similarly provides that a defendant convicted of a felony committed for the benefit of a criminal street gang shall receive an additional term "in addition and consecutive to the punishment prescribed for the felony." We presume the Legislature was aware of these existing distinctions when it enacted the RJA. (See *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 199 ["We do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied."].) Nothing in the express language of section

745 suggests the Legislature intended to collapse the longstanding distinction between offenses and enhancements.

The fact that enhancements may be dismissed as a remedy under section 745 does not alter this conclusion. If a violation is found, the RJA authorizes a trial court to dismiss charges and enhancements, among other enumerated remedies. (§ 745, subd. (e)(1)(C).) Although the statute permits dismissal of enhancements, that remedial authority does not redefine the term "offense" as used earlier in the statute in subdivisions (a)(3) and (a)(4)(A). The RJA draws a clear distinction between how a violation is demonstrated and what remedies are available once a violation is found. While an enhancement may be dismissed as a consequence of a violation, an enhancement does not qualify as an "offense" on its own. Interpreting the statute in this way preserves its structure and ensures consistency across the RJA. (See *People v. Valencia* (2017) 3 Cal.5th 347, 357 [statutes must be construed as a whole to preserve coherence].)

The RJA was enacted to eliminate bias at all stages of the criminal process. (See Assembly Bill No. 2542 (2019–2020 Reg. Sess.); Stats. 2020, ch. 317, § 2.) In interpreting section 745, we may not adopt a construction that would frustrate that purpose or produce absurd results the Legislature did not intend. (See *Arias v. Superior Court* (2009) 46 Cal.4th 969, 979 [literal construction will not control if it frustrates manifest purpose of enactment as a whole]; *Smith v. LoanMe, Inc.* (2021) 11 Cal.5th 183, 190 [plain meaning followed unless it results in absurd consequences].) Accordingly, we clarify that—while a gang enhancement, standing alone, does not qualify as an "offense" under subdivisions (a)(3) or (a)(4)(A)—enhancements may still be relevant to an RJA claim. When a petition properly alleges facts showing an offense as the basis for relief under these subdivisions, an accompanying enhancement may be part of the factual context the court considers. In that setting, a court may evaluate whether the enhancement contributed to a pattern of racial disparity in the charging or sentencing of

9.

the offense. This interpretation respects the RJA's remedial purpose while remaining faithful to its statutory language.

For all the foregoing reasons, we reject petitioner's assertion that his petition is facially valid. Even under the RJA's minimal pleading threshold, a petition must allege *facts*, not merely conclusions. (See § 1473, subd. (e).) *McIntosh* recently reaffirmed that conclusory allegations are inadequate to establish a petitioner's initial pleading burden in habeas proceedings. (*McIntosh, supra,* 110 Cal.App.5th at p. 48; see also *People v. Duvall* (1995) 9 Cal.4th 464, 474 [accord].)

Here, petitioner fails to allege facts showing a qualifying "offense"—such as attempted murder—as the basis for his RJA claims. Nowhere in the petition does he allege that he was charged with or convicted of *a more serious offense* than similarly situated individuals of other races who engaged in similar conduct. (See § 745, subd. (a)(3).) Nor does he allege that he received a longer or more severe sentence than similarly situated individuals *convicted of the same offense*. (See *id.*, at subd. (a)(4)(A).) Instead, petitioner only identifies gang enhancements as the source of the alleged disparity, asserting that they constitute a "more serious charge" imposed disproportionately on Hispanic defendants.[4] The petition rests entirely on conclusory assertions without facts tied to a specific offense. Consequently, the petition does not show a violation of the RJA, even under the statute's minimal pleading standard.[5] (See § 745, subds. (a)(3) & (a)(4)(A); § 1473, subd. (e).)

---

[4] We do not consider petitioner's accompanying statistical evidence because the only question before us is whether the petition "alleges facts that would establish a violation" of the RJA. (§ 1473, subd. (e).)

[5] In our June 12, 2024, order, we directed respondent to file an informal reply. In that order, we observed that petitioner has "provided significant statistical argument to support his contentions he was entitled to relief" under the RJA. That preliminary statement carries no legal significance in our resolution of this matter. Having now reviewed the full petition and accompanying briefing, we conclude that the petition is

Because the petition is facially defective, we need not address respondent's alternative arguments that we must deny the petition on procedural grounds.  Even if respondent's procedural objections had merit, they would not alter the outcome of this matter.

## DISPOSITION

The order to show cause is discharged, and the petition for writ of habeas corpus is denied.


                                                              LEVY, Acting P. J.

WE CONCUR:


FRANSON, J.


MEEHAN, J.

---

legally deficient and fails to allege facts that would establish a violation of the RJA.  (See § 745, subds. (a)(3) & (a)(4)(A); § 1473, subd. (e).)