[No. H029487. Sixth Dist. July 11, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
LEON JORDAN, Defendant and Appellant.

## COUNSEL

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Stan Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BAMATTRE-MANOUKIAN, J.—**

### I.  INTRODUCTION

Appellant Leon Jordan agreed to waive his right to a jury trial in exchange for a maximum sentence of 15 years. After a court trial, defendant was found guilty of three felonies, including second degree robbery (Pen. Code, § 211; count 1),[1] vehicular evasion of an officer (Veh. Code, § 2800.2; count 2), and transportation of marijuana (Health & Saf. Code, § 11360, subd. (a); count 3). The trial court also found true the allegations of five prior strike convictions (§ 667, subds. (b)–(i)) and two prior serious felony convictions (§ 667, subd. (a)(1)), for robbery and criminal threats.

Defendant was sentenced to a total term of 15 years in state prison. His sentence was structured as follows: 10 years on count 1 (§ 211; double the upper term of five years); two years on count 2 (Veh. Code, § 2800.2; the middle term, to be served concurrently); three years on count 3 (Health & Saf. Code, § 11360, subd. (a); the middle term, to be served concurrently); a five-year enhancement for the first prior serious felony conviction (to be served consecutively); and a five-year enhancement on the second prior serious felony conviction (stayed).

---

[1] All further statutory references are the Penal Code unless otherwise indicated.

On appeal, defendant contends that the trial court committed two sentencing errors. First, defendant asserts that the trial court improperly stayed the five-year enhancement on the second serious felony conviction because a stay is not authorized under section 667, subdivision (a)(1). Second, defendant argues that the upper term sentence on count 1 violates his Sixth Amendment right to a jury trial for the reasons set forth in *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*).

For reasons that we will explain, we find merit in defendant's first contention of sentencing error, but reject defendant's *Blakely* claim. Therefore, we will remand the matter for the sole purpose of allowing the trial court to restructure the sentence as authorized by law, subject to the 15-year maximum.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Factual Background*

According to the trial testimony, victim Matthew Kunz agreed to sell marijuana to Alvin Taylor[2] on three different occasions during the month of April 2005. Defendant was involved in only the third transaction.

The first sale occurred at the beginning of April at a Safeway store in Santa Cruz. Kunz and Taylor met in the Safeway parking lot at around 11:30 p.m. and went into the store's bathroom to complete the transaction. Kunz gave Taylor one ounce of marijuana and received $260.

About one week later, Taylor contacted Kunz and asked to buy two ounces of marijuana. Kunz obtained one ounce of marijuana and called Taylor. They arranged to meet at the Safeway store between 11:30 p.m. and midnight, as they had done before. Kunz subsequently changed the meeting place to a bowling alley, but Taylor did not show up. A few days later, they again decided to meet at the Safeway parking lot. After they arrived there, Kunz told Taylor to get in Kunz's car. As Kunz drove around the block, he gave Taylor the marijuana in exchange for $300.

One week after his second marijuana purchase, Taylor repeatedly asked Kunz to sell him two pounds of marijuana. Kunz obtained the marijuana and they decided to meet at the Safeway store's bathroom on the night of April

---

[2] Taylor was jointly charged as a codefendant in this matter, but he was not tried with defendant. According to the probation report, Taylor pleaded no contest to a felony charge of transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)) and was sentenced to four years in state prison.

26, 2005, to complete the sale. Taylor was to pay Kunz $8,400 for the marijuana and the backpack containing the marijuana, and in turn Kunz was to pay his supplier $7,000 for a profit of $1,400. As he walked to the Safeway store, Kunz telephoned Taylor and asked him whether he was with anyone. Taylor said no and asked Kunz the same question. Kunz also denied that anyone was accompanying him.

However, the transaction did not go forward as planned. Kunz first encountered Taylor in the dairy section of the Safeway store instead of the bathroom. Taylor did not respond to Kunz's complaint that they were supposed to meet in the bathroom, merely saying, "[A]ll right, let's get this done." Kunz then followed Taylor into the bathroom, where Taylor opened up his cell phone, typed in a couple of numbers, and hung up. Kunz thought nothing of it and went into a bathroom stall to make the sale in private. However, Taylor refused to go into the stall and instead headed to the middle of the bathroom where the sinks were located. There, Taylor opened up the backpack and inquired as to the contents and their weight. Kunz asked Taylor for the money so he could start counting the large amount of cash. Taylor responded by grabbing a wad in his pocket and saying, "[I]t's right here, don't worry about it." Kunz observed that Taylor was shaking. Taylor explained that he had never done anything like this before. Kunz replied that neither had he and again pressed Taylor for the money.

At that point, another man, whom Kunz identified in court as defendant, entered the bathroom. Kunz turned around because he was surprised and said, "[O]h, hey, what's going on, bud?" Defendant said nothing and went into a bathroom stall. Kunz was not concerned and turned back, positioning his body so that his shoulders would hide what he and Taylor were doing. As Kunz stood there, Taylor opened the plastic bags of marijuana inside the backpack. Defendant then appeared and struck Kunz in the head. Kunz blacked out and fell to the floor, and defendant got on top of him and told him not to move. Defendant also shook and patted Kunz while asking where the money was.

Kunz recalled that he was terrified after defendant attacked him and held him down. While Kunz was holding his hands over his eyes he heard Taylor crinkling bags and the sound of the backpack being zipped up. Kunz also heard Taylor and defendant conversing and saying, "[L]et's go, come on, hurry up." After defendant got up, he and Taylor walked out of the bathroom. Kunz sat for a minute and then left as quickly as possible through the nonpublic overstock area of the store. He did not see defendant or Taylor upon leaving, and called a friend to pick him up.

Around midnight, a police officer saw two men running across the Safeway parking lot. One of the men was carrying a backpack and matched the

description of the suspect in a robbery that had occurred during the previous hour. A Safeway employee rushed out of the store and told the officer that he was looking for two or three men who were running away. The police officer followed the two men he had observed with the backpack and saw them get in a car and drive off. At trial, the police officer identified defendant as the driver of the vehicle.

The police officer followed defendant's vehicle in his patrol car with the lights and siren activated. Defendant did not stop and a police pursuit ensued. After 35 or 40 minutes of chasing defendant while he exceeded the speed limit on both surface streets and the freeway and also ran a stop sign, police officers caught defendant when his car went into a ditch. The passenger in the car left with the backpack and ran into a wooded area. Defendant also got out of the car, but he became stuck in the ditch when he tried to run away and was taken into custody.

When defendant's car was searched, the police officers found ammunition in the trunk. Defendant told an officer that the ammunition was in the trunk when he bought the car. The backpack containing the marijuana was also seized on April 26, 2005, but the details of the seizure were not described during the trial testimony. The parties stipulated that the seized marijuana weighed 892 grams.

During his trial testimony, defendant denied being involved in a drug transaction. He explained that he was present at the Safeway store at the time of the incident involving Kunz and Taylor because he had given Taylor a ride to Safeway for $50. When defendant and Taylor arrived at Safeway, defendant went into the store to shop. After defendant unsuccessfully demanded that Taylor pay the $50 he owed so that defendant could pay for his groceries, defendant left the store and walked out to his car, where Taylor joined him. When they attempted to leave, a police officer pulled defendant's vehicle over. Because the officer had drawn his service weapon, defendant became afraid for his life and drove away. Eventually, defendant stopped his car and was apprehended by police officers. Taylor fled the scene with the backpack and defendant did not see him again.

### B. *Procedural Background*

The complaint charged defendant with four felony counts, including second degree robbery (§ 211; count 1); vehicular evasion of an officer (Veh. Code, § 2800.2; count 2); possession of ammunition (§ 12316, subd. (b)(1); count 3) and transportation of marijuana (Health & Saf. Code, § 11360, subd. (a); count 4). The complaint further alleged that defendant had five prior strike convictions (§ 667, subds. (b)–(i)) and had served two prior prison terms (§ 667.5, subd. (b)).

After a preliminary hearing held May 10, 2005, defendant was held to answer on all charges. An information was subsequently filed that was not identical to the complaint. The information renumbered the felony counts as follows: Count 1, second degree robbery (§ 211); count 2, vehicular evasion of an officer (Veh. Code, § 2800.2); count 3, sale or transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)); and count 4, possession of ammunition (§ 12316, subd. (b)(1)). The information also alleged that defendant had five prior strike convictions (§ 667, subds. (b)–(i)) and two prior convictions for serious felonies (§ 667, subd. (a)(1)).

The case was set for jury trial on August 29, 2005. On August 15, 2005, defendant waived his right to a jury trial in exchange for a maximum sentence or "lid" of 15 years. The trial court explained the agreement to defendant as follows:

"THE COURT: [T]his is what you want to do? You're giving something up and you're getting something in exchange for that. [¶] The District Attorney doesn't have to put any lid on this, and the maximum exposure as of now is, what, [prosecutor], prior to this agreement?

"[PROSECUTOR]: Prior to this agreement, the defendant had 125 years to life.

"THE COURT: That['s] what you're getting in exchange by giving up your right to a jury trial, that maximum sentence of a hundred plus years goes away, goes down to 15 years. There's no guarantee of what amount of time you're going to get, but it won't be any more than 15 years. [¶] You're giving up your right to have a jury come in here and your attorney and the District Attorney and the Court interview people to find out whether or not they can be fair. [¶] Twelve of them are then selected, and they decide whether or not the District Attorney can prove that you're guilty of this case. [¶] That's what you're giving up, and you're willing to have me be one person, a judge, decide that. So, you're giving up that very important right to a jury trial. You're giving up that right and getting this other part of the deal here that puts the maximum sentence in place. [¶] Do you understand all of that?

"THE DEFENDANT: Yes.

"THE COURT: And this is what do you [sic] want to do, sir; is that correct?

"THE DEFENDANT: Yes."

A court trial was held on September 6 and 7, 2005. After the evidence was presented and counsel made their closing arguments, the trial court found the defendant guilty as to count 1 (second degree robbery), count 2 (vehicular evasion of an officer), and count 3 (transportation of marijuana), and not guilty as to count 4 (possession of ammunition). The trial court also found true the allegations of five prior strike convictions and two prior serious felony convictions.

Thereafter, the trial court inquired as to whether the parties had an agreement regarding "any of the special allegations being stricken or not considered based upon the agreement for a court trial." The prosecutor responded, "Based upon [the] agreed upon deal, the Court will need to strike one of the strikes as charged under the special allegations under [section] 667 [subdivisions (b)–(i)]. There are two prison prior special allegations charged which the Court can find and sentence on one of them. It depends how the Court structures its sentencing." However, the record on appeal does not reflect that the trial court ever made a ruling with respect to striking any of the prior strike convictions.

A sentencing hearing was set for October 5, 2005, and ultimately held October 21, 2005, after the trial court received a report from the court-appointed psychologist.

## C. *Sentencing*

Prior to the sentencing hearing, the parties filed sentencing memoranda. The People argued in their statement in aggravation pursuant to California Rules of Court, rule 4.437(a), that the evidence showed a number of aggravating factors, including the defendant's prior strike convictions. The People also noted that absent the agreed-upon maximum sentence of 15 years defendant could have been sentenced to 75 years to life.

In his sentencing memorandum, defendant argued a number of circumstances in mitigation and attempted to rebut the People's contentions regarding the factors in aggravation. Defendant also requested that the trial court strike all enhancements that the court had the authority to strike, sentence him to the "mitigated term" on count 1, and "run all of the other charges and enhancements concurrently."

At the sentencing hearing held October 21, 2005, the prosecutor requested the maximum 15-year sentence be structured as follows: "The aggravated term of five years on Count 1, doubled based on his strike prior for ten years; and then one of the five[-]year priors under [section] 667 [subdivision] (a) to run consecutive, for a total of 15 years. [¶] The terms on Count 2 and [Count

3] can run concurrent, and the second [section] 667 [subdivision] (a) allegation can be stayed."

Before announcing the sentence, the trial court stated the court's finding that the factors in aggravation outweighed the factors in mitigation. Based on this finding, the trial court determined that the maximum sentence of 15 years was appropriate and adopted the sentencing structure suggested by the prosecutor, which the court restated on the record as follows: "Five years doubled by the strike makes that 10. And then the other enhancement of five years, [section] 667 [subdivision] (a), is consecutive. So, a total term of 15 years, all other counts to run [con]current, midterm sentence on the other counts." When the prosecutor inquired, "The second [section] 667 [subdivision] (a) [enhancement] is stayed?" the trial court responded, "Yes, it's stayed."[3]

Defendant did not object to the sentence after it was announced by the trial court. A timely notice of appeal was filed on October 25, 2005.

## III. DISCUSSION

On appeal, defendant seeks a remand for resentencing on the ground that the trial court imposed an unauthorized sentence. Defendant contends that the trial court improperly stayed the five-year sentence enhancement required by section 667, subdivision (a)(1) for his second prior serious felony conviction. Defendant also contends that under *Blakely, supra*, 542 U.S. 296, the trial court violated his Sixth Amendment right to a jury trial by imposing the upper term on count 1 based on aggravating factors not found to be true beyond a reasonable doubt. As we will explain, we find merit only in the first contention.

### A. *Enhancement Sentencing Error*

Defendant asserts that the five-year enhancement provided by section 667, subdivision (a)(1)[4] for any defendant who has been previously convicted of a serious felony must be imposed because the statute does not authorize the

---

[3] The record on appeal, including the minute order of the October 21, 2005, sentencing hearing, does not reflect the disposition of the five prior strike convictions.

[4] Section 667, subdivision (a)(1) provides, "In compliance with subdivision (b) of Section 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively."

court to strike or stay the enhancement. Thus, while defendant acknowledges that the trial court sentenced him to the agreed-upon maximum sentence of 15 years in accordance with his jury trial waiver agreement, defendant maintains that the sentence was improperly structured because the trial court stayed the five-year enhancement imposed for his second serious felony conviction. Defendant therefore contends that a remand for resentencing is required.[5]

The People do not dispute defendant's contention that the trial court erred in staying the second five-year enhancement under section 667, subdivision (a)(1). It has been held that "[w]hen the truth of the allegation of conviction of a crime qualifying for a five-year enhancement has been established, it is mandatory that the enhancement be imposed." (*People v. Turner* (1998) 67 Cal.App.4th 1258, 1269 [79 Cal.Rptr.2d 740].) Thus, "[c]ourts lack discretion to strike or stay allegations of prior serious felony conviction[s] under section 677, subdivision (a)(1)." (*People v. Askey* (1996) 49 Cal.App.4th 381, 389 [56 Cal.Rptr.2d 782]; but see *People v. Vera* (2004) 122 Cal.App.4th 970, 982–983 [18 Cal.Rptr.3d 896].)

However, the People argue that a remand for resentencing is unnecessary for several reasons. First, the People claim that defendant waived the issue by failing to object to the sentence structure when it was announced by the trial court. We reject this contention at the outset. The California Supreme Court has established an exception to the rule that only " 'claims properly raised and preserved by the parties are reviewable on appeal' " for claims of unauthorized sentences or sentences entered in excess of jurisdiction. (*People v. Smith* (2001) 24 Cal.4th 849, 852 [102 Cal.Rptr.2d 731, 14 P.3d 942].) "Because these sentences 'could not lawfully be imposed under any circumstances in the particular case' [citation], they are reviewable 'regardless of whether an objection or argument was raised in the trial and/or reviewing court.' " (*Ibid.*)

The People raise two additional procedural bars to defendant's appeal, lack of standing and estoppel. They assert that defendant lacks standing to challenge the sentence structure because it is well established that a defendant cannot complain of an unauthorized sentence where the defendant consented to the plea bargain, so long as the trial court had fundamental jurisdiction. The People also point to authority for the proposition that a defendant is

---

[5] In his opening brief, defendant suggested that the sentencing error could be "easily corrected" by structuring the 15-year sentence to include the middle term of three years on count one (§ 213, subd. (a)(2), "plus the mid-term of 2 years on count 2 or the low term of 2 years on count 3, plus the two 5-year serious prior felony enhancements." However, in his reply brief defendant recognized that the sentence he had suggested in his opening brief was unauthorized because, as the People pointed out in their respondent's brief, any consecutive terms must be one-third the middle term pursuant to section 1170.1, subdivision (a).

precluded from arguing on appeal that a bargained-for sentence is not compliant with statutes designed to benefit crime victims, such as sentence enhancements (*People v. Vera, supra,* 122 Cal.App.4th at p. 983) or the prohibition on plea bargaining for serious felonies (§ 1192.7; *People v. Gonzales* (1986) 188 Cal.App.3d 586, 589–590 [233 Cal.Rptr. 204]). As to estoppel, the People argue that defendant is estopped from objecting to the sentence structure on appeal because he received the benefit of his bargain, a sentence that did not exceed the agreed-upon maximum of 15 years, citing *People v. Beebe* (1989) 216 Cal.App.3d 927, 935 [265 Cal.Rptr. 242].

In *People v. Buttram* (2003) 30 Cal.4th 773 [134 Cal.Rptr.2d 571, 69 P.3d 420] (*Buttram*), the California Supreme Court provided guidance regarding appellate review of issues arising from the analogous situation of a plea agreement providing for a maximum sentence, as follows: "Unless it specifies otherwise, a plea agreement providing for a maximum sentence inherently reserves the parties' right to a sentencing proceeding in which (1) as occurred here, they may litigate the appropriate individualized sentence choice within the restraints of the bargain and the court's lawful discretion, and (2) appellate challenges otherwise available against the court's exercise of that discretion are retained." (*Id.* at p. 777.)

The defendant in *Buttram* pleaded guilty to two felony charges and admitted two prior serious or violent felonies in exchange for a maximum sentence of six years. On appeal, the defendant challenged the trial court's denial of his request for diversion to a drug treatment program as an abuse of discretion. The appellate court dismissed the appeal on the ground that the defendant had failed to obtain a certificate of probable cause, which was required because "by appealing the very sentence he agreed *could* be imposed, defendant effectively was attacking the plea's validity." (*Buttram, supra,* 30 Cal.4th at p. 776.) The California Supreme Court disagreed, noting that the defendant's agreement did not include a waiver of his right to appeal sentencing issues. (*Ibid.*) Our Supreme Court determined that "when the parties agree to a *specified* sentence, any challenge to that sentence attacks a term, and thus the validity, of the plea itself." (*Id.* at p. 789.) "However, by negotiating only a *maximum* term, the parties leave to judicial discretion the proper sentencing choice within the agreed limit. Unless the agreement itself specifies otherwise, appellate issues relating to this reserved discretion are therefore outside the plea bargain and cannot constitute an attack on its validity." (*Ibid.,* fn. omitted.)

We find the rule in *Buttram* applicable to defendant's claim of sentencing error arising from the jury trial waiver agreement in the present case. While a jury trial waiver is not a plea bargain in the traditional sense of a defendant

entering a plea of guilty in exchange for consideration by the prosecution, in this case it is analogous to a plea bargain because the prosecution has made a promise of consideration in exchange for the defendant's waiver of the constitutional right to a jury trial. (See *People v. Sanders* (1987) 191 Cal.App.3d 79, 85 [236 Cal.Rptr. 197]; see also *People v. Collins* (2001) 26 Cal.4th 297, 305 [109 Cal.Rptr.2d 836, 27 P.3d 726].) As in *Buttram*, the defendant here agreed to a maximum sentence. This fact is crucial to our analysis because it renders the present case distinguishable from the cases relied upon by the People.

As we have discussed, the People rely on *People v. Vera, supra,* 122 Cal.App.4th at page 983, and *People v. Gonzales, supra,* 188 Cal.App.3d at pages 589–590, for the proposition that a defendant is precluded from arguing on appeal that a bargained-for sentence is not compliant with statutes designed to benefit crime victims, such as the sentence enhancement at issue in the present case. In *Vera*, the plea bargain included an agreement that "[i]f the court denied the *Romero*[6] motion, the People would request dismissal of the 'Prop. 8 priors' (five-year enhancements for serious felony convictions under § 667, subd. (a))." (*People v. Vera, supra,* 122 Cal.App.4th at p. 975.) The defendant argued on appeal that the trial court lacked authority to strike the five-year enhancements. This court determined that "[e]ven if the court's sentence exceeded its jurisdiction, a defendant cannot complain of getting what he bargained for so long as the court had fundamental jurisdiction." (*Id.* at p. 983.)

In *Gonzales*, the defendant entered into a plea bargain in which he agreed to plead guilty to assault and intentional infliction of great bodily injury in exchange for dismissal of a burglary charge and dismissal of the section 667, subdivision (a)(1), prior serious felony enhancements. (*People v. Gonzales, supra,* 188 Cal.App.3d at p. 588.) The defendant then appealed, asserting noncompliance with section 1192.6, which requires the prosecutor to provide on the record a statement of reasons for recommending the plea agreement. The defendant also claimed that his plea bargain violated the prohibition on plea bargaining in serious felony cases set forth in section 1192.7, subdivision (a). (*People v. Gonzales, supra,* 188 Cal.App.3d at p. 589.) The appellate court ruled that the defendant lacked standing to challenge these sentencing irregularities because section 1192.6 and 1192.7 were enacted "to protect the public and not defendants." (*People v. Gonzales, supra,* 188 Cal.App.3d at p. 590.)

The People also rely on *People v. Beebe, supra,* 216 Cal.App.3d 927, in which the appellate court ruled that the defendant could not withdraw his no

---

[6] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].

contest plea on the ground that the trial court lacked authority to approve a plea bargain where the parties had agreed that defendant's felony conviction for violating section 288, subdivision (a), would be reduced to a misdemeanor violation of former section 647a (now section 647.6) upon successful completion of probation.[7] The appellate court concluded that defendant was estopped from withdrawing his plea on the ground of a sentencing irregularity that was beneficial to him. (*People v. Beebe, supra,* 216 Cal.App.3d at p. 933.)

■ The decisions relied upon by the People are distinguishable because in each case the plea bargain included an agreement to specific terms that the defendant then challenged on appeal as unauthorized. Such challenges are barred under the general principle that "[a] litigant who has stipulated to a procedure in excess of jurisdiction may be estopped to question it when '[t]o hold otherwise would permit the parties to trifle with the courts.' " (*In re Griffin* (1967) 67 Cal.2d 343, 348 [62 Cal.Rptr. 1, 431 P.2d 625].) Thus, with respect to plea bargains, the California Supreme Court has ruled that "[w]here the defendants have pleaded guilty in return for a *specified* sentence, appellate courts will not find error even though the trial court acted in excess of jurisdiction in reaching that figure, so long as the trial court did not lack *fundamental* jurisdiction." (*People v. Hester* (2000) 22 Cal.4th 290, 295 [92 Cal.Rptr.2d 641, 992 P.2d 569].)

■ In the present case, defendant did not agree to waive his jury trial right in exchange for a specific sentence or any specified term other than a 15-year maximum sentence. Significantly, defendant did not agree that his waiver was conditioned upon the trial court staying one of the two 5-year enhancements required by section 667, subdivision (a). Therefore, defendant's claim that his sentence is unauthorized because the trial court improperly stayed a five-year enhancement in violation of section 667, subdivision (a)(1), is cognizable on appeal pursuant to the rule of *Buttram, supra,* 30 Cal.4th at page 789. As we have discussed, in *Buttram* the California Supreme Court established that where the parties negotiate only a maximum term "[s]uch an agreement, by its nature, contemplates that the court will choose from among a range of permissible sentences within the maximum, and that abuses of this discretionary sentencing authority will be reviewable on appeal, as they would otherwise be." (*Buttram, supra,* 30 Cal.4th at pp. 790–791.)

Since the People do not dispute defendant's contention that the trial court was not authorized to stay the five-year enhancement for a prior serious felony conviction that is required by section 667, subdivision (a)(1) (*People v.*

---

[7] The appellate court in *Beebe* noted that "this plea condition conflicts with sections 17, 1192.5, and 1203.4 . . . ." (*People v. Beebe, supra,* 216 Cal.App.3d at p. 932.)

*Turner, supra,* 67 Cal.App.4th at p. 1269; *People v. Askey, supra,* 49 Cal.App.4th at p. 389), we will remand for the sole purpose of allowing the trial court to restructure a permissible sentence, subject to the 15-year maximum.

### B. Blakely *Sentencing Error*

Defendant claims that imposition of the five-year upper term on count 1 violates his Sixth Amendment right to a jury trial under *Blakely v. Washington, supra,* 542 U.S. 296, because the trial court relied on aggravating factors that were not proven beyond a reasonable doubt.

In *Blakely,* the United States Supreme Court applied the rule that the court had first expressed in *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 120 S.Ct. 2348]: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Following its decision in *Apprendi,* the Supreme Court in *Blakely* determined that a defendant's right to a jury trial is violated when the trial court imposes a term greater than the specified statutory maximum for the offense because of a fact not admitted by the accused or found to exist by jurors. (*Blakely, supra,* 542 U.S. at p. 303.)

The People contend that defendant forfeited his claim of *Blakely* error by failing to assert it in the trial court. We need not consider the issue of forfeiture or whether defendant's jury trial waiver is fatal to his claim of *Blakely* error. Even if defendant's claim is not barred either by forfeiture or his jury trial waiver, defendant's claim lacks merit under the California Supreme Court's decision in *People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534] (*Black*).

In *Black,* the court reviewed California's determinate sentencing scheme in light of the *Blakely* decision and ruled that the "judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial." (*Black, supra,* 35 Cal.4th at p. 1244.) This is because "[t]he jury's verdict of guilty on an offense authorizes the judge to sentence a defendant to any of the three terms specified by statute as the potential punishments for that offense, as long as the judge exercises his or her discretion in a reasonable manner that is consistent with the requirements and guidelines contained in statutes and court rules." (*Id.* at pp. 1257–1258.) "Only in a case in which a judge could not reasonably identify any relevant

aggravating factor in either the circumstances of the crime or the defendant's prior or current criminal conduct, would the judge be limited to imposing no more than a middle-term sentence." (*Id.* at p. 1258.)

In the present case, the trial court acting as the finder of fact pursuant to defendant's jury trial waiver determined that defendant was guilty of three felony offenses and selected the upper term of five years for count 1 (second degree robbery). In *Black*, our Supreme Court noted that " '[s]election of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation.' (Cal. Rules of Court, rule 4.420(b).)" (*Black, supra*, 35 Cal.4th at p. 1247.) The trial court was therefore authorized to sentence defendant to the upper term as long as the court exercised its discretion in a reasonable manner consistent with California Rules of Court, rule 4.420(b).[8]

At the sentencing hearing, the trial court found the following factors in aggravation existed, pursuant to California Rules of Court, rule 4.421: (1) the defendant was convicted of other crimes for which consecutive sentences could have been imposed, but for which concurrent sentences are being imposed (rule 4.421(a)(7)); (2) the manner in which the crime was carried out indicated planning (rule 4.421(a)(8)); (3) the crime involved an attempt or actual taking of property of great monetary value (rule 4.421(a)(9)); (4) the crime involved a large quantity of contraband (rule 4.421(a)(10)); (5) defendant had engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)); (6) defendant's prior convictions were numerous (rule 4.421(b)(2)); and (7) defendant had served a prior prison sentence (rule 4.421(b)(3)). The trial court further found that the only circumstance in mitigation was defendant's good performance on parole.

Based on our review of the record, we find that the trial court did not abuse its discretion when the court determined that imposition of the upper term on count one was justified because the factors in aggravation outweighed the single factor in mitigation. Accordingly, we conclude that defendant's claim of *Blakely* error lacks merit.

---

[8] California Rules of Court, rule 4.420(b), provides, "Circumstances in aggravation and mitigation shall be established by a preponderance of the evidence. Selection of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation. The relevant facts are included in the case record, the probation officer's report, other reports and statements properly received, statements in aggravation or mitigation, and any further evidence introduced at the sentencing hearing. Selection of the lower term is justified only if, considering the same facts, the circumstances in mitigation outweigh the circumstances in aggravation."

## IV.  DISPOSITION

The judgment of conviction is reversed and the matter is remanded for sentencing. Upon remand, the trial court shall restructure the sentence as authorized by law, subject to the agreed-upon maximum sentence of 15 years.

Premo, Acting P. J., and Duffy, J., concurred.