Filed 3/17/16  P. v. Mitchell CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>PATSY RUTH MITCHELL,<br><br>        Defendant and Appellant. | F069782<br><br>(Super. Ct. Nos. MCR045659, MCR047117)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Kenneth N. Sokoler and Sean M. McCoy, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Kane, Acting P.J., Poochigian, J. and Franson, J.

Patsy Ruth Mitchell was convicted of various crimes as the result of an incident that began when a police officer informed her there was a warrant for her arrest. Mitchell decided she wanted to be arrested at her home, so she left the scene. In the process, she struck the police officer with her vehicle, and then led him on a high speed chase through town that ended up at her house. At the house, she initially refused to exit the vehicle, and displayed a small knife to the officers. The convictions included assault with a deadly weapon against a police officer. (Pen. Code, § 245, subd. (c).)[1] The trial court also found true the allegation that Mitchell had suffered a prior conviction that constituted a strike pursuant to the provisions of section 667, subdivisions (b)–(i).

Mitchell argues in her opening brief the trial court erred when it refused to dismiss her prior strike conviction pursuant to the provisions of section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). We requested additional briefing on the issue of whether the trial court erred in imposing a section 667, subdivision (a) serious felony enhancement, which was only alleged on a count that was stayed pursuant to section 654. We reject the first argument, but conclude the trial court erred when it failed to stay the serious felony enhancement. Accordingly, we will remand the matter to the trial court for resentencing.

## FACTUAL AND PROCEDURAL SUMMARY

The complaint was filed on February 4, 2013. On November 8, 2013, the trial court suspended criminal proceedings and ordered Mitchell examined to determine if she was competent to stand trial pursuant to the provisions of section 1368. After psychological examinations, the trial court determined Mitchell was competent and reinstituted criminal proceedings. Thereafter, the trial court granted the prosecution's motion to consolidate two criminal filings against Mitchell, and the parties waived the right to a jury trial.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

The operative pleading at trial was the second amended information, which charged Mitchell with (1) assault with a deadly weapon (an automobile) upon a peace officer during the performance of his duties (§ 245, subd. (c)), (2) assault with a deadly weapon (an automobile) (§ 245, subd. (a)(1)), (3) exhibition of a deadly weapon to avoid arrest (§ 417.8), (4) driving with willful and wanton disregard for the safety of persons or property of others while evading a police officer (Veh. Code, § 2800.2), and (5) two counts of misdemeanor resisting arrest (§ 148, subd. (a)(1)). The four felony counts also alleged that Mitchell had suffered a prior conviction that constituted a strike within the meaning of section 667, subdivisions (b)–(i). The assault with a deadly weapon count (count 2) alleged Mitchell suffered a prior serious felony conviction within the meaning of section 667, subdivision (a)(1) (hereafter the five-year serious felony enhancement).

The first incident on which testimony was received occurred on September 21, 2012, and resulted in one count of misdemeanor resisting arrest. Madera Police Officer Jocelyn Beck noticed Mitchell driving at night with only her parking lights turned on. Beck initiated a traffic stop. Upon stopping her vehicle, Mitchell exited the vehicle and walked aggressively towards Beck, ignoring several orders to return to her vehicle. Beck eventually was able to convince Mitchell to move to the sidewalk. Beck described Mitchell as aggressive and argumentative during the entire episode. Beck decided to search Mitchell for officer safety. Mitchell began to struggle and attempted to run to her vehicle. Two officers were required to restrain her.[2]

The second incident occurred on August 29, 2013. Madera Police Officer William Spears responded to a commercial area of the city where he saw a woman standing next to a vehicle that was parked near the entrance to a self-storage business. Spears stopped his patrol vehicle, approached the woman, and inquired why she was in the area. The

---

[2]     Madera Police Officer Steven Boehm, who was partnered with Beck but in a separate vehicle, testified in a manner consistent with Beck in all material respects.

woman had a pair of pliers in her hand, but turned them over to Spears upon request. The woman said she was in the area to visit a friend, and pointed to the vehicle in which Mitchell sat. Spears approached Mitchell, who was sitting in the back seat of her vehicle. Mitchell told Spears she was there to provide security for the self-storage business because a lot of break-ins were occurring in the area.

When Spears checked Mitchell's identification, he learned there was a misdemeanor arrest warrant outstanding. Spears attempted to explain to Mitchell she could not remain in the area and he would have to write her a ticket for the warrant. Mitchell became argumentative, and shut and locked all of the vehicle doors. Spears attempted to convince Mitchell to open the doors, but she refused. Mitchell next climbed into the front seat of the vehicle, ignoring Spears's attempts to convince her to exit the vehicle. Spears returned to his patrol vehicle to retrieve his baton so he could break one of the vehicle windows. Mitchell started the vehicle. Spears told Mitchell to turn off the engine and exit the vehicle. Mitchell drove the vehicle at Spears, hit his right leg, and knocked him onto the hood of the vehicle. Mitchell then drove towards the front of Spears's patrol vehicle while he was on the hood of her vehicle. Spears was able to get off of the hood of Mitchell's vehicle and wound up between his vehicle, a brick wall, and Mitchell's vehicle. Mitchell began driving towards Spears again. Spears was trapped, so he pulled his gun and screamed at Mitchell that if she did not stop the vehicle he would shoot her. Mitchell finally stopped the vehicle and began doing something with her cell phone. Spears went to the driver's door of Mitchell's vehicle and attempted to break the window with the butt of his service weapon. Mitchell drove away and Spears followed.

Mitchell drove at high speeds and through red stop lights. Other officers joined the chase. Mitchell eventually stopped in the driveway of a home and began honking her horn. She refused to exit the vehicle despite numerous orders to do so by Spears. A window was broken to gain access to the interior of the vehicle. Sergeant Williams then reached into the vehicle to unlock the door. Mitchell grabbed his arm and displayed a

knife. Spears pointed his firearm at Mitchell and ordered her to drop the knife. Mitchell complied. Mitchell eventually opened her door and was pulled from the vehicle by officers. She struggled and did not obey commands. The officers put her on the ground and were able to place her in handcuffs.[3]

Spears sustained only minor injuries as a result of being struck by Mitchell's vehicle. He recovered a small knife from Mitchell's vehicle.

Mitchell testified in her defense. She admitted the confrontation with Spears, but claimed she initially did not realize he was a police officer. When she realized he was an officer, she ignored his commands and drove away because she wanted to go home. She knew she was going to be arrested and wanted to make sure her property was not stolen. She denied hitting Spears with her vehicle, denied driving at an excessive rate of speed, and denied displaying a knife.

The trial court found Mitchell guilty as charged and found the enhancements true. It sentenced her to the midterm of four years for the assault on a police officer count, stayed the sentence on the assault count, and sentenced her to a consecutive term of one-third the midterm for the displaying a knife count (one year), and for the evading the police count (eight months). The sentence on each count was doubled pursuant to section 667, subdivision (e)(1). The trial court sentenced Mitchell to time served on the misdemeanor counts. Finally, the trial court imposed the five-year serious felony enhancement pursuant to section 667, subdivision (a).

## DISCUSSION

Mitchell argues the trial court abused its discretion when it refused to exercise its discretion and strike the allegation that she had suffered a prior conviction that

---

[3]     Madera Police Officers Randal Williams and Maricela Noriega Munoz, who assisted with the apprehension of Mitchell, both testified in a similar manner.

constituted a strike. The principles governing the trial court's exercise of discretion are well established.

Section 1385 permits the trial court to dismiss an action in furtherance of justice on its own motion. The Supreme Court held in *Romero* that this section permitted the trial court to dismiss a prior conviction that constituted a strike within the meaning of section 667, subdivisions (b)–(i), subject "to strict compliance with the provisions of section 1385 and to review for abuse of discretion." (*Romero*, *supra*, 13 Cal.4th at p. 504.) *Romero* also summarized the applicable principles for utilization of the authority granted trial courts in section 1385.

> "'The trial court's power to dismiss an action under section 1385, while broad, is by no means absolute. Rather, it is limited by the amorphous concept which requires that the dismissal be in "furtherance of justice." As the Legislature has provided no statutory definition of this expression, appellate courts have been faced with the task of establishing the boundaries of the judicial power conferred by the statute as cases have arisen challenging its exercise. Thus, in measuring the propriety of the court's action in the instant case, we are guided by a large body of useful precedent which gives form to the above concept.

> "'From the case law, several general principles emerge. Paramount among them is the rule "that the language of [section 1385], 'in furtherance of justice,' requires consideration both of the constitutional rights of the defendant, and *the interests of society represented by the People,* in determining whether there should be a dismissal. [Citations.]" [Citations.] At the very least, the reason for dismissal must be "that which would motivate a reasonable judge." [Citations.] [Citation.] 'Courts have recognized that society, represented by the People, has a legitimate interest in "the fair prosecution of crimes properly alleged." "'[A] dismissal which arbitrarily cuts those rights without a showing of detriment to the defendant is an abuse of discretion.' [Citations.]"' [Citation.]

> "From these general principles it follows that a court abuses its discretion if it dismisses a case, or strikes a sentencing allegation, solely 'to accommodate judicial convenience or because of court congestion.' [Citation.] A court also abuses its discretion by dismissing a case, or a sentencing allegation, simply because a defendant pleads guilty. [Citation.] Nor would a court act properly if 'guided solely by a personal antipathy for

6.

the effect that the three strikes law would have on [a] defendant,' while ignoring [the] 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' [Citation.]

"A court's discretionary decision to dismiss or to strike a sentencing allegation under section 1385 is also reviewable. '[W]here the court's action lacks reason it may be invalidated upon timely challenge.' [Citation.] Section 1385 anticipates, and facilitates, appellate review with the requirement that '[t]he reasons for the dismissal must be set forth in an order entered upon the minutes.' [Citation.] 'The statement of reasons is not merely directory, and neither trial nor appellate courts have authority to disregard the requirement. It is not enough that on review the reporter's transcript may show the trial court's motivation; the *minutes* must reflect the reason "so that all may know why this great power was exercised."' [Citations.]" (*Romero*, *supra*, 13 Cal.4th at pp. 530–531.)

In *People v. Williams* (1998) 17 Cal.4th 148 (*Williams*), the Supreme Court provided further guidance for ruling on a motion to dismiss a prior conviction. "We therefore believe that, in ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to … section 1385[, subdivision ](a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Williams*, *supra*, at p. 161.)

In this case, we are not reviewing a trial court's decision to strike a prior conviction allegation, but its refusal to do so. In *People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*), the Supreme Court confirmed that a trial court's refusal to exercise its discretion is reviewable for an abuse of discretion. Once again, the Supreme Court provided guidance for trial courts and appellate courts in addressing the issue.

"In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the

7.

sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'" [Citations.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.

"Because 'all discretionary authority is contextual' [citation], we cannot determine whether a trial court has acted irrationally or arbitrarily in refusing to strike a prior conviction allegation without considering the legal principles and policies that should have guided the court's actions. We therefore begin by examining the three strikes law.

"'[T]he Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders.' [Citation.] To achieve this end, 'the Three Strikes law does not offer a discretionary sentencing choice, as do other sentencing laws, but establishes a sentencing requirement to be applied in every case where the defendant has at least one qualifying strike, unless the sentencing court "conclude[es] that an exception to the scheme should be made because, for articulable reasons which can withstand scrutiny for abuse, this defendant should be treated as though he actually fell outside the Three Strikes scheme."' [Citation.]

"Consistent with the language of and the legislative intent behind the three strikes law, we have established stringent standards that sentencing courts must follow in order to find such an exception. '[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, "in furtherance of justice" pursuant to … section 1385[, subdivision ](a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies.' [Citation.]

"Thus, the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm

8.

and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper.

"In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss. [Citation.] Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. [Citation.]

"But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] Where the record is silent [citation], or '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' [Citation.] Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary. Of course, in such an extraordinary case—where the relevant factors described in *Williams*, *supra*, 17 Cal.4th 148, manifestly support the striking of a prior conviction and no reasonable minds could differ—the failure to strike would constitute an abuse of discretion." (*Carmony*, supra, 33 Cal.4th at pp. 376–378.)

*Carmony* makes clear that the refusal to strike a prior conviction will constitute an abuse of discretion in only rare cases, an observation supported by Mitchell's failure to cite a single case in which an appellate court overturned a trial court's refusal to strike a prior conviction. The cases we have found in which an abuse of discretion was found in these circumstances do not aid Mitchell. (*People v. Vargas* (2014) 59 Cal.4th 635, 638–639 [failure to strike one of two prior convictions an abuse of discretion where both convictions arose from a single criminal act]; *People v. Burgos* (2004) 117 Cal.App.4th

9.

1209, 1211–1212 [same]; *People v. Fritz* (1985) 40 Cal.3d 227 [trial court unaware of its discretion to strike prior conviction].)

We conclude this is not the unusual case where the trial court abused its discretion, i.e. whether, in light of the nature and circumstances of her present felonies and prior serious and/or violent felony convictions, and the particulars of her background, character, and prospects, Mitchell may be deemed outside the spirit of the Three Strikes law and, hence, should be treated as though she had not previously been convicted of a serious and/or violent felony. (*Williams*, *supra*, 17 Cal.4th at p. 161.)

The probation report provides the starting point for our analysis. Mitchell was 67 years old at the time of sentencing. Mitchell's criminal history began in the late 1960's and early 1970's, when she suffered four misdemeanor convictions for what appear to be prostitution related crimes. In 1972, she was convicted of burglary and placed on three years' probation.

Mitchell's next conviction occurred 33 years later, when she was convicted of misdemeanor theft. Three years later, she was convicted of felony exhibiting a deadly weapon to avoid arrest and was sentenced to two years in prison. This final conviction was the basis for the trial court's finding that Mitchell had suffered a prior serious felony and prior strike conviction.

The primary thrust of both Mitchell's motion in the trial court and in this court is her psychiatric evaluation, which is significant but did not amount to a defense to the action. We begin by rejecting Mitchell's suggestion that the trial court may not have reviewed this report. Defense counsel attached the report to the motion, which the trial court indicated it had read. The comment on which Mitchell relies came in response to defense counsel's inquiry if the trial court and the prosecutor had received the attachment. The trial court asked, "What is the attachment?" at the same time Mitchell asked to be heard. Defense counsel then informed the court that Mitchell wished to be heard, and the trial court permitted her to speak. We read the trial court's comment as an

10.

attempt to verify to what defense counsel was referring when he referred to the attachment, and not as a comment that it did not read or receive the psychologist's report.

The psychologist's report does not aid Mitchell's argument. The diagnostic impressions section of the report listed a diagnosis of "Other Specified Personality Disorder, with paranoid, schizotypal and antisocial features." The report explained this diagnosis in the summary.

> "Diagnostically, Ms. Mitchell appears to suffer from a severe personality disorder marked by paranoid ideation, unstable thought processes, pronounced guardedness and defensiveness, antisocial behavior, difficulty sustaining interpersonal relationships and weak reality testing. Specifically she (a) suspects, without sufficient basis, that others might be trying to harm her; (b) can read demeaning meanings into benign remarks from others and can be quick to react angrily; (c) lacks close friends and confidants and does not appear to desire close relationships; (d) has a pervasive pattern of social and interpersonal deficits; (e) has eccentric behavior; (f) is subject to cognitive or perceptual distortions; (g) is impulsive; (i) [*sic*] has a pattern of failing to conform to social norms with respect to lawful behaviors, as indicated by repeatedly performing acts that are grounds for arrest; and (j) has repeated failure to sustain consistent work behavior."

Further clarification was provided later in the report. After explaining that Mitchell was not convinced the police were conspiring against her and her family, the report explained, "On the other hand, Ms. Mitchell's inflexible and disordered characterological style is marked by suspiciousness of … others, paranoid ideation, impulsivity, antisocial attitudes and weak reality testing, which leaves her vulnerable to acting impulsively on inaccurate perceptions and beliefs about others and the world. In addition, her poor insight leaves her to usually not question the veracity of her perceptions, beliefs or attitudes."

The report then explained the likely sequence of events that led to the instant charges. Mitchell likely panicked when the officer told her she had a warrant for her arrest, jumped to the conclusion she was going to be arrested, and quickly responded

11.

angrily. Instead of questioning her perceptions, Mitchell reacted impulsively. "Believing she was going to be arrested, she decided that she wanted to get her vehicle and belongings to the house she felt was safe so they would not be vandalized by the vehicle remaining at the storage facility. She did not care whether what she was doing was right or wrong, only that she was intent—due to her rigid and inflexible thinking—on doing what she wanted to do. Even in the midst of her confusion, she described taking pains to tell the officer to move out of the way, stating that she did not want to hit him. She said she knew she was going to be arrested and likely taken to jail but wanted to be arrested on her terms. Her poor judgment and distorted, inflexible thinking result[ed] in her not taking the time to fully think through the consequences of her actions."

The report concluded that "Ms. Mitchell is in dire need of long-term psychotherapy to address her severe personality disorder. She does not appear to have had any history of psychiatric or psychological treatment to address these issues. Unfortunately, she does not really believe she has any mental or emotional problems, preferring to externalize her problems onto those around her. Her compliance with treatment would likely be problematic."

Mitchell made a statement to the court that largely confirmed the observations in the report. In essence, she claimed that because of something she wrote, the Bible predicted people would follow her everywhere she goes. She described this group of people as a religious cult. She claimed she is required to share her government benefits with these people, apparently because the sheriff's department was assisting these people.

Counsel argued the charges arose out of Mitchell's mental health issues, as did the 2008 conviction. According to defense counsel, these mental health issues were a mitigating factor in her criminal conduct. Moreover, because of her age, the proposed sentence would be a life sentence. Finally, defense counsel pointed out that most of her criminal conduct was over 30 years old, and she had not caused anyone serious harm.

Accordingly, defense counsel argued Mitchell did not fall within the spirit of the Three Strikes law, and the trial court should dismiss the prior strike conviction.

These facts and defense counsel's argument were worthy of consideration by the trial court, but did not require the trial court to dismiss the prior conviction. Other factors weighed heavily in favor of denial of the request, primarily Mitchell's severe psychological problems and her refusal to recognize these problems or seek treatment for them. As a result, Mitchell presented a serious risk of reoffense once out of prison, and also a serious risk her behavior would escalate, causing great bodily injury or death. The trial court could reasonably draw these inferences, and rely on these inferences when concluding the request should be denied. It did not abuse its discretion in reaching this conclusion.

In reviewing the record, we noted the second amended information charged Mitchell in count 2 with assault with a deadly weapon. This count also included an enhancement alleging Mitchell had suffered a prior serious felony conviction within the meaning of section 667, subdivision (a). Unlike the prior strike allegation, which was alleged as to all four felony counts, the prior serious felony enhancement was alleged as to count 2 only.

At sentencing the trial court imposed sentence on count 1, assault with a deadly weapon on a police officer, and properly stayed the sentence on count 2, which was based on the same assaultive conduct, Mitchell's act of striking Officer Spears with her vehicle. However, the trial court imposed the prior serious felony enhancement that was alleged in count 2. We requested supplemental briefing from the parties on the question of whether the trial court could impose an enhancement even though it stayed imposition of the sentence on the count to which the enhancement attached.

We included in our letter a reference to *People v. Guilford* (1984) 151 Cal.App.3d 406 (*Guilford*). In *Guilford*, the defendant was convicted of attempted robbery and murder. These two convictions arose out of the same acts. Guilford attempted to steal

13.

the victim's purse, and struck her over the head with a tire iron when she resisted. The victim died two days later of a heart attack caused by the attempted theft of her purse. (*Id.* at pp. 409–410.) Guilford was sentenced on the murder count, but the sentence on the attempted robbery count was properly stayed pursuant to section 654. (*Guilford*, *supra*, at p. 411.) However, two enhancements attached to the attempted robbery count. The trial court stayed sentence on one of the enhancements, but imposed sentence on a one-year enhancement for use of a deadly weapon (§ 12022, subd. (b)). (*Guilford*, *supra*, at p. 411.) The appellate court concluded the sentence on the use enhancement must also be stayed.

> "We have not been referred to nor have we discovered any cases dealing with the precise question presented here, i.e., whether an enhancement relating to a count may be treated as having viability independent of the sentence on that count, so that even where the sentence on the count is stayed, the enhancement as to that term is not automatically required to be stayed. We conclude that the effect of refusing to stay that enhancement here breathes independent life into count I and does violence to the concept embodied in section 654. We hold that an enhancement must necessarily be stayed where the sentence on the count to which it is added is required to be stayed.
>
> "By definition, an enhancement 'means an additional term of imprisonment added to the base term.' (Cal. Rules of Court, rule 405(c).) A base term 'is the determinate prison term selected from among the three possible terms prescribed by statute or the determinate prison term prescribed by law if a range of three possible terms is not prescribed.' (Cal. Rules of Court, rule 405(b).)
>
> "Section 12022, subdivision (b), provides in part that: 'Any person who personally uses a deadly or dangerous weapon in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, *in addition and consecutive to* the punishment prescribed for the felony or attempted felony of which he has been convicted, be punished by an *additional term* of one year, unless use of a deadly or dangerous weapon is an element of the offense of which he was convicted.…'

14.

"By definition, then, since an enhancement for use of a deadly weapon in connection with commission or attempted commission of a felony is imposed in addition and consecutive to the prescribed punishment for the felony or attempted felony, it follows that time to be served for the enhancement can only be served if and after time is served on the base term. Consequently, if the stay of the sentence for the base term becomes permanent, time for that enhancement, by definition, will never be served. Furthermore, failure to stay an enhancement, where the base term to which it is added is stayed, and requiring that time be served only for the enhancement has the effect of elevating the enhancement to the status of an offense. Enhancements are not offenses, they are punishments. [Citation.]" (*Guilford*, *supra*, 151 Cal.App.3d at pp. 411–412, italics added, fn. omitted.)

The Attorney General argues *Guilford* is inapposite because the enhancement at issue in *Guilford* was an enhancement related to the crime, while the enhancement at issue here relates to Mitchell. While the Supreme Court has explained there is a difference between the two types of enhancements,[4] the Attorney General fails to explain why this distinction requires a different result in this case. It appears she argues that because Mitchell was aware the enhancement was charged, i.e., Mitchell knew she was exposed to an enhanced term because of a prior serious felony conviction, the enhancement was properly pled. Since the enhancement was properly pled and related to Mitchell's status, according to the Attorney General, it is irrelevant that the enhancement was attached to a count for which the sentence was stayed.

---

**4**     "'A determinate term for a given offense might also be lengthened by sentence enhancements.' [Citation.] 'Enhancements typically focus on an element of the commission of the crime or the criminal history of the defendant which is not present for all such crimes and perpetrators and which justifies a higher penalty than that prescribed for the offenses themselves.' [Citation.] '[T]here are at least two types of sentence enhancements: (1) those which go to the nature of the offender; and (2) those which go to the nature of the offense.' [Citation.] The first category typically enhances the sentence due 'to the *defendant's status* as a repeat offender.' [Citation.] 'The second category of enhancements, which are exemplified by those authorized under sections 12022.5 and 12022.7, arise from the *circumstances of the crime* and typically focus on what the defendant did when the current offense was committed.' [Citation.]" (*People v. Ahmed* (2011) 53 Cal.4th 156, 161.)

The flaw in the Attorney General's logic is patent; it ignores the issue for which we asked for supplemental briefing. Mitchell received notice that if she was convicted of assault with a deadly weapon, she would be exposed to a five-year enhancement because she had suffered a prior serious felony conviction. She was also put on notice that if she was convicted of both counts 1 and 2, one would have to be stayed pursuant to the provisions of section 654. Nowhere does the information inform Mitchell that if she was only convicted of count 1, she would also be subject to a five-year serious felony enhancement on count 1.

We think this is the correct analysis. If Mitchell was found not guilty of count 2, the jury would never had been asked to consider the five-year serious felony enhancement. An enhancement cannot be imposed unless the defendant is first convicted of the count to which the enhancement attaches. Or, in the words of *Guilford*, an enhancement does not have any viability independent of the sentence for the count to which the enhancement attaches. (*Guilford*, *supra*, 151 Cal.App.3d at p. 411.) This concept is simple; enhancements do not define criminal acts, but increase punishment for criminal acts when an aspect of the crime or the criminal warrants additional punishment. (*People v. Ahmed*, *supra*, 53 Cal.4th at p. 163.) Therefore, if the alleged criminal act is not punished, the enhancement cannot be imposed.

A simple example demonstrates this point. Assume the only crime with which Mitchell was charged was count 2, and this count included the five-year serious felony enhancement. If the jury found Mitchell not guilty of this count, the enhancement could not be imposed even though Mitchell had suffered a prior serious felony conviction.

We cannot conceive of any reason why the analysis would change when section 654 is considered. Mitchell was convicted of count 2, and the trial court found the five-year serious felony enhancement true. But since the sentence on count 2 was stayed pursuant to the provisions of section 654, so must the sentence on the enhancement on count 2 be stayed.

The Attorney General's argument asks us to amend the second amended information to allege the five-year serious felony enhancement on counts 1 and 2, which the district attorney could have done. In doing so, the Attorney General is asking us to infringe on the prosecution's charging discretion. "'[T]he prosecuting authorities, exercising executive functions, ordinarily have the sole discretion to determine whom to charge with public offenses and what charges to bring. [Citations.] This prosecutorial discretion to choose, for each particular case, the actual charges from among those potentially available arises from "'the complex considerations necessary for the effective and efficient administration of law enforcement.'" [Citations.] The prosecution's authority in this regard is founded, among other things, on the principle of separation of powers, and generally is not subject to supervision by the judicial branch. [Citations.]' [Citation.]" (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 552.) We cannot simply amend the information to allege an enhancement the prosecutor chose not to charge.

The cases cited by the Attorney General in her supplemental brief do not aid her argument. For example, *People v. Purata* (1996) 42 Cal.App.4th 489, 498, *People v. Jordan* (2006) 141 Cal.App.4th 309, 318–323, *People v. Askey* (1996) 49 Cal.App.4th 381, 389, and *People v. Jones* (2015) 236 Cal.App.4th 1411, 1415–1417, provide general statements of law unrelated to the issue before this court.

The only remaining question is the proper disposition. The parties both suggest remand is unnecessary for different reasons. We disagree. The trial court must determine the proper sentence, knowing that if it imposes sentence on count 1 and stays the sentence on count 2, the five-year serious felony enhancement must also be stayed. Accordingly, we will remand the matter to the trial court to resentence Mitchell.

## DISPOSITION

The judgment of conviction is affirmed. The sentence is vacated and the matter remanded to the trial court for resentencing.

17.